118 P.3d 333 (2005)
STATE of Washington, Respondent,
v.
Samuel William GURSKE, Petitioner.
No. 75156-1.
Supreme Court of Washington, En Banc.
Argued January 20, 2005.
Decided August 25, 2005.
*334 Steven P. Martonick, Snyder & Martonick Law Offices, Pullman, for Petitioner.
Ann Colburn Shannon, Ponte Vedra Beach, FL, for Respondent.
MADSEN, J.
¶ 1 Petitioner Samuel William Gurske contends that his deadly weapon sentence enhancement is invalid because the pistol found in a backpack in his truck was not readily available, and therefore he was not armed at the time of the commission of the crime of possession of a controlled substance. We agree and reverse the Court of Appeals.

Facts
¶ 2 The parties stipulated to the facts. On August 2, 2001, a Pullman, Washington, police officer stopped Gurske for making an illegal left turn. The officer asked Gurske for his driver's license, vehicle registration, and insurance information. Mr. Gurske said he did not have his wallet with him, but he provided the vehicle registration for his pickup truck. He also gave his name, address, and date of birth. The officer conducted a driver's check through the local police database and learned that Gurske's Idaho driver's license had been suspended. The officer arrested Gurske for driving while his license was suspended, handcuffed him, searched him, and placed him in the back of his patrol car.
¶ 3 A second officer arrived. Pursuant to city police procedure, the officers conducted an inventory search before impounding Gurske's truck. One of the officers
began the inventory on the driver side, seeing nothing on the driver's seat, he pulled the front seat forward and saw a black backpack sitting directly behind the driver[']s seat. The backpack was within arm[']s reach from the driver's position. However, the backpack was not removable by the driver without first either exiting the vehicle or moving into the passenger seat location. [The Officer] unzipped the top, main portion of the backpack and saw a Coleman torch. Upon moving the torch the Officer saw what appeared to be a gun holster. [The Officer] removed this object from the backpack and found a black 9mm pistol in the holster. The pistol was unloaded, but a fully loaded magazine for the pistol was found in the backpack.
*335 Clerk's Papers at 16. After removing the backpack from the truck, the officer also found three grams of methamphetamine and Mr. Gurske's wallet in the backpack.
¶ 4 Gurske was charged with possession of a controlled substance (methamphetamine), a class C felony, while armed with a deadly weapon. Following a bench trial on the stipulated facts, the trial court found Gurske guilty. In addition to a standard range sentence, the court imposed an 18 month sentence enhancement based on its finding that Gurske was armed with a deadly weapon while committing the crime.[1]
¶ 5 Gurske appealed, arguing the deadly weapon sentence enhancement was improperly imposed. The Court of Appeals affirmed the conviction and sentence in a split decision. State v. Gurske, 120 Wash.App. 63, 83 P.3d 1051 (2004), review granted, 152 Wash.2d 1013, 101 P.3d 108 (2004). The dissenting judge reasoned that the sentence enhancement was improper because Gurske could not access the backpack without exiting the truck or moving into the passenger seat; therefore, the weapon was not easily accessible and readily available, and accordingly Gurske was not armed. Gurske, 120 Wash.App. at 67-68, 83 P.3d 1051 (Schultheis, J., dissenting).

Analysis
¶ 6 Gurske contends that the stipulated facts do not prove beyond a reasonable doubt that he was armed with a deadly weapon while possessing methamphetamine. The State argues that the trial court did not err in imposing the deadly weapon enhancement.
¶ 7 RCW 9.94A.602 (formerly RCW 9.94A.125),[2] provides in relevant part that
[i]n a criminal case wherein there has been a special allegation and evidence establishing that the accused . . . was armed with a deadly weapon at the time of the commission of the crime, the court shall make a finding of fact of whether or not the accused . . . was armed with a deadly weapon at the time of the commission of the crime[.]
¶ 8 A firearm is a deadly weapon. RCW 9.94A.602. A person is "armed" within the meaning of the statute "`if a weapon is easily accessible and readily available for use, either for offensive or defensive purposes.'" State v. Schelin, 147 Wash.2d 562, 567, 55 P.3d 632 (2002) (quoting State v. Valdobinos, 122 Wash.2d 270, 282, 858 P.2d 199 (1993)). There must be a nexus between the defendant, the crime, and the weapon. Schelin, 147 Wash.2d at 568, 55 P.3d 632.[3]
¶ 9 Gurske maintains that the stipulated facts show only that the pistol was in close proximity to him, not that it was easily accessible and readily available. He argues that proximity or constructive possession alone is insufficient to establish that he was armed.
¶ 10 Gurske is correct that mere proximity or mere constructive possession is insufficient to establish that a defendant was armed at the time the crime was committed. "[T]he mere presence of a weapon at a crime scene" in and of itself "may be insufficient to establish the nexus between a crime and a weapon," and thus insufficient to show that the defendant was armed. Schelin, 147 Wash.2d at 570, 55 P.3d 632. Further, our holding in Valdobinos that the weapon must be easily accessible and readily available "clearly established that mere constructive possession is insufficient to prove a defendant is `"armed" with a deadly weapon during the commission of a crime.'" Id. at 567, 55 P.3d 632 (quoting Valdobinos, 122 Wash.2d at 282, 858 P.2d 199).
¶ 11 Instead, the weapon must be easily accessible and readily available for use, either for offensive or defensive purposes. *336 This requirement means that where the weapon is not actually used in the commission of the crime, it must be there to be used. In adopting the "easily accessible and readily available" test, we recognized that being armed is not confined to those defendants with a deadly weapon actually in hand or on their person. This is consistent with the legislature's obvious intent to punish those who are armed during the commission of a crime more severely than those who are unarmed because the risk of serious harm to others is greater. This greater risk exists whether the defendant actually has a weapon in hand or the weapon is easily accessible and readily available. When the legislature enacted the "Hard Time for Armed Crime Act of 1995" (Initiative 159), it expressly recognized that "[a]rmed criminals pose an increasing and major threat to public safety and can turn any crime into serious injury or death." Laws of 1995, ch. 129, § 1(1)(a) (Initiative Measure No. 159).
¶ 12 The accessibility and availability requirement also means that the weapon must be easy to get to for use against another person, whether a victim, a drug dealer (for example), or the police. The use may be for either offensive or defensive purposes, whether to facilitate the commission of the crime, escape from the scene of the crime, protect contraband or the like, or prevent investigation, discovery, or apprehension by the police. See Schelin, 147 Wash.2d at 572-73, 55 P.3d 632 (noting the deadly weapon statute is directed at more than the protection of the police, the legislature also intended to deter armed crime and to protect victims from armed crime). The legislature has expressly recognized that armed individuals engaged in criminal conduct might use a deadly weapon for "several key reasons including: Forcing the victim to comply with their demands; injuring or killing anyone who tries to stop the criminal acts; and aiding the criminal in escaping." Laws of 1995, ch. 129, § 1(1)(b) (Initiative Measure No. 159). For this reason, the plurality in Schelin declined to state an absolute rule regarding the time when the defendant must be armed during the commission of the crime, i.e., when the crime is being committed or when police discover the crime is being committed. Schelin, 147 Wash.2d at 572-73, 55 P.3d 632. In the case of a possession offense, for example, a weapon could be used to obtain drugs (by theft or otherwise), to protect the drugs, or to prevent investigation or apprehension by the police at the time they discover the drugs or seek to execute a warrant. Regardless of the offense, whether the defendant is armed at the time a crime is committed cannot be answered in the same way in every case.
¶ 13 Valdobinos and Schelin illustrate this point. In Valdobinos, one of the defendants argued that a deadly weapon enhancement was improperly imposed. He had been arrested at his home after offering to sell drugs to an undercover agent and removed from the residence. Valdobinos, 122 Wash.2d at 273, 858 P.2d 199. The residence was then "cleared" and the home searched pursuant to a warrant. Id. During the search, cocaine was found, and a rifle was discovered in the bedroom under the bed. Id. at 274, 858 P.2d 199. There was no evidence the rifle had been used or was readily available for use to facilitate the commission of a crime, i.e., against a victim or some other person, and no evidence that it was readily available for defensive purposes against anyone, and more particularly, no evidence that it was available to use against the officers who arrived to effect the arrest and execute the search warrant. At the time the rifle was discovered, the defendant had already been arrested and removed from the scene, with no indication that he had been near the bed or bedroom or had been heading toward the bedroom  or any other evidence to show that the defendant was "`armed' in the sense of having a weapon accessible and readily available for offensive or defensive purposes." Id. at 282, 858 P.2d 199.
¶ 14 In contrast, in Schelin, when officers executing a search warrant entered the defendant's home, he was in the basement at the bottom of the stairs. Schelin, 147 Wash.2d at 564, 55 P.3d 632. The basement contained two rooms and a laundry room, and in one room police discovered marijuana plants and in the other harvested marijuana and related items. Id. Officers also discovered a loaded revolver in a holster hanging *337 from a nail on a wall about 6 to 10 feet away from where the defendant had been standing. On these facts we held that the weapon was easily accessible and readily available for use against the police in an escape attempt or to protect the contraband or to prevent apprehension for possession of the marijuana.
¶ 15 The nexus requirement refines the analysis and serves to place "parameters . . . on the determination of when a defendant is armed, especially in the instance of a continuing crime such as constructive possession" of drugs. Schelin, 147 Wash.2d at 568, 55 P.3d 632. Without a nexus between the defendant, the crime, and the weapon, "courts run the risk of punishing a defendant under the deadly weapon enhancement for having a weapon unrelated to the crime." State v. Willis, 153 Wash.2d 366, 372, ¶ 18, 103 P.3d 1213 (2005) (citing State v. Johnson, 94 Wash.App. 882, 895, 974 P.2d 855 (1999)). First, there must be a nexus between the defendant and the weapon. Again, Valdobinos and Schelin are instructive. In Valdobinos, as explained, the defendant was not in close proximity to the weapon when it was discovered, nor was there any evidence that he had been at a time when availability for use for offensive or defensive purposes was important. In Schelin, however, the defendant was close to the easily accessible and readily available weapon at the time the police entered the house.
¶ 16 Cases decided by the Court of Appeals are also instructive. In State v. Mills, 80 Wash.App. 231, 907 P.2d 316 (1995), after finding methamphetamine in the defendant's car, an officer arrested him and placed him in the back of a patrol car where he was seen making furtive movements. A search of the patrol car then yielded a motel key. Pursuant to a search warrant, police then searched the motel room to which the key belonged and found more methamphetamine and a pistol in a pouch beside the drugs. The defendant was convicted of possession of a controlled substance with intent to deliver while armed with a deadly weapon. The Court of Appeals reversed the deadly weapon enhancement. Although it found a nexus between the weapon and the drugs, the required nexus between the defendant and the weapon was not present; there was no physical proximity to the weapon at a time when availability for use for offensive or defensive purposes was critical. Id. at 237, 907 P.2d 316.
¶ 17 In Johnson, when police entered the defendant's apartment the defendant was running from the living room toward the bathroom. After police handcuffed and placed the defendant at a table between the living and dining room, they asked him if there were any weapons in the apartment. The defendant said that there was a loaded gun in the coffee table in the living room some five to six feet away. Johnson, 94 Wash.App. at 888, 974 P.2d 855. The Court of Appeals reversed the deadly weapon enhancement, reasoning that there was no realistic possibility that the defendant could access the gun while sitting handcuffed five to six feet away. Id. at 894, 974 P.2d 855. It is also significant that at the time the police entered, the defendant was leaving the living room-he made no movement toward the table where the gun was located. Thus, although there was physical proximity  at least as much as in Schelin  there was no evidence from which the trier of fact could infer that the weapon was easily accessible and readily available for use for either offensive or defensive purposes and there was insufficient nexus between the defendant and the weapon.
¶ 18 In State v. Sabala, 44 Wash.App. 444, 723 P.2d 5 (1986), where the "easily accessible and readily available" test was first adopted in Washington, the defendant, who had been under surveillance since he had purchased heroin, was stopped while driving his car, and a search of his person yielded heroin in his sock. In a search of the car pursuant to consent, police found a loaded gun under the driver's seat with the grip easily accessible to the driver. Id. at 445, 448, 723 P.2d 5. The defendant did not dispute that the gun was his, and it was easily visible to one leaning into the car. Id. at 448, 723 P.2d 5. Although Sabala does not contain a "nexus" analysis, it is also instructive because there was clearly a nexus between the defendant and the weapon  after purchasing heroin, which was on his person, the defendant was sitting in the driver's *338 seat from which the weapon was easily accessible and readily available for use against the officer who stopped him.
¶ 19 There must also be a nexus between the weapon and the crime. The mere presence of a weapon at the crime scene may be insufficient. "One should examine the nature of the crime, the type of weapon, and the circumstances under which the weapon is found (e.g., whether in the open, in a locked or unlocked container, in a closet on a shelf, or in a drawer)." Schelin, 147 Wash.2d at 570, 55 P.3d 632.
¶ 20 Here, the stipulated facts state the backpack was within arm's reach, but not whether the pistol was within Gurske's reach. The backpack was behind the driver's seat, which the police pulled forward before accessing the backpack. The backpack was not removable by the driver unless he exited the truck or moved into the passenger seat. The backpack was zipped, and a torch was on top of the pistol. The facts do not indicate whether Gurske could unzip the backpack, remove the torch, and remove the pistol from the driver's seat where he was sitting at the time he was stopped by the police officer. They do not state that he made any movement toward the backpack. Nor is there any evidence whatsoever that Gurske had used or had easy access to use the weapon against another person at any other time, i.e., when he acquired or was in possession of the methamphetamine.
¶ 21 The State argues, however, that the trier of fact could infer that Gurske could reach over or around the driver's seat and obtain the weapon and thus this case is like Sabala, where the gun was under the driver's seat, easily accessible and readily available, and State v. Taylor, 74 Wash.App. 111, 872 P.2d 53 (1994), where at the time the police entered to execute a search warrant the defendant was sitting on a couch next to the coffee table where the gun was located. But while there was physical proximity of the pistol, the methamphetamine, and Gurske, there is simply nothing in the stipulated facts here giving rise to the inference that Gurske could reach over or around the driver's seat and access the weapon from the driver's seat. To support the deadly weapon sentence enhancement the evidence, here the stipulated facts, viewed in the light most favorable to the State, must be sufficient for any rational trier of fact to find that the defendant was armed with a deadly weapon at the time of the commission of the crime. Cf. State v. DeVries, 149 Wash.2d 842, 849, 72 P.3d 748 (2003) (sufficiency of evidence standard for conviction of crime). There is insufficient evidence to show that the pistol was easily accessible and readily available for use for offensive or defensive purposes, unlike Sabala, Taylor, and Schelin.
¶ 22 As Gurske contends, the stipulated facts do not show beyond a reasonable doubt that he was armed with a deadly weapon at the time of commission of the crime. Accordingly, the deadly weapon enhancement was improper.
¶ 23 The Court of Appeals decision is reversed and this matter is remanded for resentencing.
ALEXANDER, C.J., C. JOHNSON, BRIDGE, OWENS and FAIRHURST, JJ., concur.
SANDERS, J. (concurring).
¶ 24 I concur in the majority's result, but not much else. We should no longer countenance the "easily accessible/readily available/nexus" framework for determining when a person is "armed" in order to enhance his or her sentence. The framework does not comport with the plain meaning of "armed," and as recent cases have aptly demonstrated, it provides little guidance to trial courts in the application. Given the constitutional impacts of this framework, as demonstrated in State v. Schelin, 147 Wash.2d 562, 587-98, 55 P.3d 632 (2002) (opinion of Sanders, J.), we cannot be sanguine about a system that rests the denial of constitutional rights on the mere subjective impressions of one, two, or five judges. The lack of definitional guidance combined with the absence of limiting principles compels reexamination of the "easily accessible/readily available/nexus" doctrine.
¶ 25 First, a bit of history. When the Court of Appeals first adopted the "readily available/easily accessible" definition of *339 "armed" it did so with little analysis. See State v. Sabala, 44 Wash.App. 444, 447-48, 723 P.2d 5 (1986). We turned to "[o]ther jurisdictions" for this definition, without analyzing whether their laws were similar to Washington's, whether those jurisdictions' state constitutions contained comparable protection of the right to keep and bear arms, or whether those jurisdictions had analyzed the plain meaning of the term. Id. at 448, 723 P.2d 5. The Court of Appeals chose to rely on other jurisdictions in spite of the fact that it quoted State v. Hauck,[1] which in turn quoted the 1976 edition of Webster's Third New International Dictionary definition of "armed."[2]
¶ 26 Even 10 years before Sabala it was common for this court to emphasize that in absence of ambiguity, the plain meaning of statutory terms controls, and we turn to the dictionary to find that meaning:
Words in a statute should be given their ordinary meaning absent ambiguity and/or a statutory definition. . . . In so doing, we frequently resort to dictionaries to ascertain the common meaning of statutory language.
Garrison v. Wash. State Nursing Bd., 87 Wash.2d 195, 196, 550 P.2d 7 (1976) (citations omitted).
¶ 27 The Sabala court should have turned to the dictionary definition it quoted to discern the meaning of "armed" rather than resorting to the opinions of courts from other states.
¶ 28 That definition is virtually identical with the current Webster's definition. Webster's Third New International Dictionary defines "armed" as "furnished with weapons of offense or defense: fortified, equipped." Webster's Third New International Dictionary 119 (2002). "Furnished" is defined as "to provide or supply . . .: EQUIP." Id. at 923. "Equip" is defined as "to supply with material resources." Id. at 768. "Fortify" is defined as "to equip and supply." Id. at 895. Therefore, to be "armed" one must be equipped or furnished with a weapon. These definitions clearly require actual possession, rather than constructive possession.
¶ 29 This should have been the end of it. But in State v. Valdobinos, 122 Wash.2d 270, 858 P.2d 199 (1993), this court  with no analysis  adopted the Sabala definition. Id. at 282, 858 P.2d 199. But we took only the "easily accessible" and "readily available" portions, leaving it until State v. Schelin, 147 Wash.2d 562, 55 P.3d 632 (2002) to reintroduce the offhand "nexus" language from Sabala. And we used the term not as a descriptor, as in Sabala,[3] but as a legal requirement.[4]See Schelin, 147 Wash.2d at 570, 55 P.3d 632.
¶ 30 The concluding sentence of Justice Ireland's opinion in Schelin specifically added the nexus requirement to the definition of "armed":
A defendant is "armed" when he or she is within proximity of an easily and readily available deadly weapon for offensive or defensive purposes and when a nexus is established between the defendant, the weapon, and the crime.
Schelin, 147 Wash.2d at 575-76, 55 P.3d 632 (emphasis added).
¶ 31 While all nine justices in Schelin accepted that mere constructive possession is insufficient to support a firearms enhancement and that the State must also establish a nexus between the defendant, the weapon, and the crime, we have not further defined the nexus requirement or elaborated exactly what makes a nexus. Instead, we have defined the term "nexus" by what it is not.
*340 ¶ 32 "[T]he mere presence of a deadly weapon at the crime scene is insufficient to show that the defendant is `armed.'" State v. Willis, 153 Wash.2d 366, 371-72, 103 P.3d 1213 (2005); see also Schelin, 147 Wash.2d at 570, 55 P.3d 632. "[M]ere constructive possession is insufficient to prove a defendant is `"armed" with a deadly weapon. . . .'" Id. at 567, 55 P.3d 632 (quoting former RCW 9.94A.125 (1983)). These statements are the extent of our definition to this point.
¶ 33 The majority combines these precepts, stating "mere proximity or mere constructive possession is insufficient to establish that a defendant was armed at the time the crime was committed." Majority at 335. The majority goes on to state the requirement that a weapon must be easily accessible and readily available for either offensive or defensive use "means that where the weapon is not actually used in the commission of the crime, it must be there to be used" and "the weapon must be easy to get to for use against another person." Majority at 336. I have a hard time seeing how this clarifies the "easily accessible/readily available" portion of the framework. One presumes that a nearby weapon is usually kept near for a purpose, and the purpose of a weapon is to be "used" either to fire bullets or shot, to cut someone or something, or to bash someone or something. Unless it has been converted into a planter and has a rose sticking out the barrel, it is highly unlikely that any gun will be available other than for "use."[5]
¶ 34 The majority goes on to catalog possible uses before turning to the "nexus" half of the test.[6] After quoting Schelin for the claim that the nexus requirement "serves to place `parameters . . . on the determination of when a defendant is armed,'" majority at 337, the majority fails to demonstrate how the nexus requirement fulfills this goal.
¶ 35 The majority explains: "First, there must also be a nexus between the defendant and the weapon." Majority at 337. But the majority's attempt to illuminate this "nexus" through the facts of Valdobinos and Schelin ends up turning on proximity, even though the majority has already stated that "mere proximity" is insufficient to establish that the defendant was armed. Majority at 335.[7]
*341 ¶ 36 The majority also states, "There must also be a nexus between the weapon and the crime. The mere presence of a weapon at the crime scene may be insufficient." Majority at 338 (emphasis added). Other than quoting an admonition from Schelin to look at the facts, the majority does not explicate this requirement at all.
¶ 37 The total substance of the "nexus" requirement enunciated by the majority is that there must be one.[8] Unfortunately, the "nexus" bears more than a passing resemblance to Justice Potter Stewart's famed description of hardcore pornography: "I know it when I see it."[9]
¶ 38 Indeed, the majority concludes its discussion by focusing on the facts of the case. I concur in the majority's view that, regardless of what a nexus is, there isn't one here. But the facts of this case, when contrasted with those of Willis, amply demonstrate the lack of any guiding principles except an ever-changing majority's subjective views.
¶ 39 In Samuel Gurske's case, the pistol was in a backpack behind the driver's seat. But, as the majority notes, the State argued "that the trier of fact could infer that Gurske could reach over or around the driver's seat and obtain the weapon." Majority at 338. I have a very difficult time discerning a distinction with a difference between these facts and Willis, where the weapon was located under the backseat of a car with four people seated inside, yet was held to be easily accessible and readily available to the driver of the vehicle. Is it harder to reach into a backpack behind one's seat or past the legs of passengers to grab a weapon under the backseat? *342 And should constitutional rights turn on these minute distinctions?
¶ 40 "[A]y, there's the rub."[10] In Schelin, four judges stated that "[r]equiring a nexus between the defendant, the crime, and the weapon protects against violation of the right to bear arms." Schelin, 147 Wash.2d at 575, 55 P.3d 632 (opinion of Ireland, J.). But this was a mere plurality. I stated that allowing the imposition of a firearms sentence enhancement for other than use of the "firearm to aid the commission of the crime charged" violated the state constitution. Id. at 595, 55 P.3d 632 (opinion of Sanders, J.).
¶ 41 This court has not yet resolved whether the state constitution requires more than a nebulous "nexus" to infringe on the specific constitutional right to keep and bear arms.[11] Allowing innumerable factual distinctions that make no difference to control the exercise of a constitutional right that is absolute within its scope, leaves our citizenry blowing in the proverbial wind, unable to discern whether their constitutionally protected acts will be recognized by the courts.
¶ 42 In Sabala and Valdobinos Washington's courts mistakenly threw the switch that sent us down the wrong track by adoptingwith no analysisa definition of "armed" concocted by other jurisdictions. We should return to the appropriate "plain language" analysis and define "armed" according to the dictionary. Under this definition one must actually possess a weapon in order to be armed. Further, in the absence of this commonsense correction, I continue to adhere to the position I stated in Schelin that even under our prior case law constructive possession of a firearm is never sufficient as a matter of law, to prove that one is "armed" under RCW 9.94A.602, and any firearm sentence enhancement based on constructive possession, rather than actual possession, may infringe on the right to keep and bear arms under article I, section 24 of the Washington Constitution. See Schelin, 147 Wash.2d at 587-93, 55 P.3d 632.
¶ 43 In the present case there was no allegation that Samuel Gurske actually possessed a firearm during the course of his offense, and thus I concur in the result reached by the majority.
J.M. JOHNSON, J., concurs.
CHAMBERS, J. (concurring).
¶ 44 I concur. I write separately to express my concern that unless courts explicitly require the State to prove a nexus between the defendant, the crime, and the gun under certain circumstances, we put at risk the constitutionally guaranteed right to bear arms.
¶ 45 "The right of the individual citizen to bear arms in defense of himself, or the state, shall not be impaired . . . ." Const. art. I, § 24. This right is enshrined in both the United States and Washington State Constitutions. See also U.S. Const. amend. II. And, of course, "constitutionally protected behavior cannot be the basis of criminal punishment." State v. Rupe, 101 Wash.2d 664, 704, 683 P.2d 571 (1984). But the use of a weapon in the commission of a crime is not a constitutionally protected activity. Cf. State v. Krantz, 24 Wash.2d 350, 353, 164 P.2d 453 (1945). In light of both principles, our legislature may criminalize or otherwise burden the right to bear arms only when it acts rationally within established constitutional guidelines, and judicial implementation of legislative action must be mindful of the constitutional restraints. See generally Rupe, 101 Wash.2d at 703-08, 683 P.2d 571.
¶ 46 The "Hard Time for Armed Crime Act of 1995" (Initiative 159), Laws of 1995, ch. 129, § 21, and other laws provide for mandatory enhanced prison sentences for crimes committed with weapons. See also RCW 9.94A.533. To harmonize the mandatory sentence enhancements under these acts with the constitutional right to bear arms, a plurality of this court concluded, among other things, that there must be a nexus between the weapon the crime, and the defendant. State v. Schelin, 147 Wash.2d 562, 575-76, 55 P.3d 632 (2002). It is not enough that the defendant owns a weapon, or has one near *343 by; such weapons must be there to be used. Id.; cf. majority at 335-336.
¶ 47 But I note a distressing trend toward substantially relieving the State of its burden to prove such a nexus. Increasingly, it seems the nexus requirement is a closely held secret known only to appellate courts; the State and juries need not be bothered with it. Most jarringly, this court has recently held that the jury need not be instructed that there must be a nexus between the weapon, the crime, and the defendant. State v. Willis, 153 Wash.2d 366, 373-74, 103 P.3d 1213 (2005). This case could have given us an opportunity to reaffirm the State's burden to show that the defendant was actually armed during the commission of a crime by showing not merely that a gun was present, but that there was a nexus between the gun, the crime, and the defendant. I do not believe it is enough for the State to prove that "the weapon [is] easily accessible and readily available for use, either for offensive or defensive purposes," majority at 335. We should not be routinely determining whether there was a nexus (and thus whether the defendant was actually armed) on some species of harmless error review.
¶ 48 Merely because the weapon is theoretically accessible does not, in my view, create a nexus between the weapon, the defendant, and the crime. The sentencing enhancement does not just apply to violent crimes; it applies to nearly all felonies. RCW 9.94A.533(3).[1] Is it reasonable to say that a defendant charged with the class C felony of false statement to the department of revenue, RCW 82.32.290(2)(a)(iii), is "armed" if she happens to have a gun within reach as she fills out the tax forms? Should a college student growing a single marijuana plant in his kitchen be subject to additional punishment merely because of proximity to a drawer full of kitchen knives? See RCW 9.94A.602 (defining any knife with a blade longer than three inches as a deadly weapon). Worse yet for him if a member of the family has a gun collection close by.[2]
¶ 49 I conclude that this court erred when it effectively relaxed the standard necessary to show that a defendant was actually armed in the course of a crime by implicitly approving of an incomplete jury instruction. See Willis, 153 Wash.2d at 373-74, 103 P.3d 1213; cf. State v. Valdobinos, 122 Wash.2d 270, 282, 858 P.2d 199 (1993) (mere constructive possession insufficient). Our constitutions guarantee the right to bear arms. While this is subject to reasonable regulation, such regulation must be carefully designed not to burden the legitimate enjoyment of the right. In many contexts, the mere fact that a weapon was "readily available" or "easily accessible" casts a shadow over the right by subjecting citizens who are exercising their constitutional right to bear arms to a much higher sentence than citizens who do not exercise this right, notwithstanding whether or not the weapon was actually used in a crime in any meaningful way. See, e.g., State v. Sabala, 44 Wash.App. 444, 447-48, 723 P.2d 5 (1986). This impermissibly chills the right to bear arms. I would take this opportunity to reaffirm that the State must explicitly prove to the trier of fact that there was in fact a nexus between the weapon, the crime, and the defendant, and that the weapon was there to be used not merely there.
¶ 50 In this case, the majority has correctly ruled that a man with an unloaded pistol in a zippered backpack in an unreachable location in a vehicle is not meaningfully "armed" *344 even under the expansive approach recently approved of by Washington courts. Majority at 335-336, 338. Accordingly, I concur with the majority in result.
J.M. JOHNSON, J., concurs.
NOTES
[1] If the defendant is armed at the time the crime is committed, an 18 month sentence enhancement "shall be added to the standard sentence range" for a class C felony (with exceptions not relevant here). RCW 9.94A.533(3)(c).
[2] The statute will be cited hereafter as RCW 9.94A.602.
[3] The lead opinion in State v. Schelin, 147 Wash.2d 562, 55 P.3d 632 (2002) is a plurality opinion, but the "easily accessible and readily available" and "nexus" requirements are holdings of the court. See State v. Valdobinos, 122 Wash.2d 270, 282, 858 P.2d 199 (1993); Schelin, 147 Wash.2d at 566-70, 55 P.3d 632 (plurality), 576-77 (Alexander, C.J., concurring).
[1] 33 Wash.App. 75, 651 P.2d 1092 (1982).
[2] "Under Webster's Third New International Dictionary 119 (1976), `armed' means `furnished with weapons of offense or defense: fortified, equipped . . . furnished with something that provides security, strength, or efficacy.'" Sabala, 44 Wash.App. at 447, 723 P.2d 5 (quoting Hauck, 33 Wash.App. at 77, 651 P.2d 1092).
[3] 44 Wash.App. at 449, 723 P.2d 5.
[4] Schelin adopted the requirement from the Court of Appeals in State v. Johnson, 94 Wash.App. 882, 974 P.2d 855 (1999), which in turn relied on another Court of Appeals opinion, State v. Mills, 80 Wash.App. 231, 907 P.2d 316 (1995). Yet Mills again used the term "nexus" as a description of evidence, rather than as a legal requirement. Id. at 236, 907 P.2d 316.
[5] Further, as noted in State v. Taylor, 74 Wash.App. 111, 125, 872 P.2d 53 (1994), a deadly weapon need not be loaded (and thus, "usable"). Although under the definition included in RCW 9.94A.602, a nonfunctional gun might not be a deadly weapon: "For purposes of this section, a deadly weapon is an implement or instrument which has the capacity to inflict death and from the manner in which it is used, is likely to produce or may easily and readily produce death." RCW 9.94A.602. But our Court of Appeals has opined that a "malfunctioning" gun can still support a deadly weapon enhancement, State v. Faust, 93 Wash.App. 373, 381, 967 P.2d 1284 (1998), and that a disassembled gun is still a "firearm" under RCW 9.41.010(1), State v. Padilla, 95 Wash.App. 531, 978 P.2d 1113 (1999). Though this definition may not be directly applicable to RCW 9.94A.602, that statute goes on to state that "[t]he following instruments are included in the term deadly weapon: . . . pistol, revolver, or any other firearm." Although I have not supported the practice, we have looked to related statutes to supply meaning. Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wash.2d 1, 43 P.3d 4 (2002); see also State v. Robinson, 153 Wash.2d 689, 700, 107 P.3d 90 (2005) (Sanders, J., dissenting).
[6] Even the majority's cataloging of potential "uses" of a weapon contains broad dicta likely to be misconstrued. The majority states: "The use may be for either offensive or defensive purposes, whether to facilitate the commission of the crime, escape from the scene of the crime, protect contraband or the like, or prevent investigation, discovery, or apprehension by the police." Majority at 336 (emphasis omitted). A weapon may certainly be used for these pursuits, but that does not make one "armed" in the commission of a specific crime. Being armed to "protect contraband," such as stolen property, months after the property was stolen does not make one armed when one committed the theft. The majority's broad description cannot supplant the elements of specific crimes and cannot "extend" such crimes indefinitely past clear endpoints dictated by the legislature.
[7] The majority also examines several Court of Appeals cases. Majority at 337-338. I reviewed the development of the doctrine through these same cases in my opinion in Schelin, 147 Wash.2d at 582-86, 55 P.3d 632 (opinion of Sanders, J.), but worth noting is that the majority's analysis of several of these cases still devolves to proximity. In discussing State v. Mills, 80 Wash.App. 231, 907 P.2d 316 (1995), the majority notes, "[T]here was no physical proximity to the weapon at a time when availability . . . was critical." Majority at 337. In discussing Sabala, the majority focused on the weapon being under the driver's seat, i.e., close (within easy reach) to the driver. Majority at 337-338.

It is interesting that in discussing State v. Johnson, 94 Wash.App. 882, 974 P.2d 855 (1999), the majority states, "although there was physical proximityat least as much as in Schelinthere was no evidence from which the trier of fact could infer that the weapon was easily accessible and readily available for use for either offensive or defensive purposes and there was insufficient nexus between the defendant and the weapon." Majority at 337. The Johnson court focused on the fact that the defendant was in handcuffs when the officers found the gun. Johnson, 94 Wash.App. at 894, 974 P.2d 855. However, Johnson was charged and convicted of the continuing crime of possession with intent to deliver, and the Johnson court never explained why the appropriate time frame for being constructively "armed" was the moment after the defendant had been placed in handcuffs. This seems particularly incongruous when compared with Schelin, where the defendant had also already been placed in handcuffs when the weapon was discovered, and the weapon was actually farther away from the defendant (6 to 10 feet) than the weapon in Johnson (5 to 6 feet). The weapon on Schelin was hung from a nail on a wall. The weapon in Johnson was in an unlocked cabinet under a coffee table. Where is the distinction that makes a difference to conclude one was armed and the other not? Does the existence of an unlocked cabinet door protect one's constitutional right to bear arms? How does the unlocked cabinet door compare with the extra 1 to 4 feet an accused must travel to reach his weapon? These microdistinctions, based on no principle a citizen can discern in advance, demonstrate the bankruptcy of the easily accessible/readily available/nexus framework.
[8] My own summary of the case law in Schelin also demonstrates that we have defined the requirements for being armed more by what does not meet the requirements than what does:

In sum, this line of precedent establishes the following: First, constructive possession of a firearm is insufficient to support a deadly weapons sentence enhancement. Second, a defendant's potential to use a firearm in connection with a criminal enterprise is also not enough to apply former RCW 9.94A.125. Third, merely establishing a firearm was present on premises where an ongoing crime was committed is insufficient as a matter of law to justify enhancing a sentence for the substantive crime. And finally, the State must affirmatively prove beyond a reasonable doubt a nexus between the defendant, the crime, and the weapon.
Schelin, 147 Wash.2d at 586, 55 P.3d 632 (opinion of Sanders, J.) (citations omitted).
Further, the value of this "nexus" requirement, when after Willis a jury need not be instructed that it must find a nexus, is ephemeral. If a jury need not be instructed as to the nexus requirement, they can find that a defendant was "armed" solely on the basis of finding that a weapon was "easily accessible" and "readily available"in other words, nearby and apparently not locked up (unless one happens to be in handcuffs sometimes). As I indicated in Willis, 153 Wash.2d at 375-78, 103 P.3d 1213 (Sanders, J., dissenting), such instruction allows juries to find a defendant "armed" on the basis of "mere proximity." This lack of instruction leads our courts to resolve voluminous sufficiency-of-the-evidence challenges when a jury follows instructions and finds a weapon available and accessible, but appellate courts end up deciding in each case on the issue of whether there was a "nexus."
[9] Jacobellis v. Ohio, 378 U.S. 184, 197, 84 S.Ct. 1676, 1683, 12 L.Ed.2d 793 (1964) (Stewart, J., concurring).
[10] William Shakespeare, Hamlet, act 3, scene 1.
[11] "The right of the individual citizen to bear arms in defense of himself, or the state, shall not be impaired . . . ." Const. art. I, § 24.
[1] The statute exempts certain firearms offenses and does not address unranked felonies. RCW 9.94A.533(3)(f).
[2] Our law makes a sharp distinction at sentencing between the possession of a firearm and the possession of other deadly weapons. Illustratively, possession of a single firearm will result in a five year enhancement for a class A felony and three years for a class B felony. RCW 9.94A.533(3)(a), (b). Such enhancements are mandatory, served while in total confinement, and consecutive to the sentence for the offense and to each other. 9.94A.533(3)(e). By contrast, a defendant armed with a nonfirearm deadly weapon, such as a knife, would receive an enhancement of two years for a class A felony and one year for a class B felony. RCW 9.94A.533(4)(a), (b). In either case, if the offender has the poor judgment to commit a second crime with a firearm or deadly weapon enhancement, the enhancements are doubled, further compounding how differently the two types of weapons are treated. RCW 9.94A.533(3)(d), (4)(d).