# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 53475-4-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| MATTHEW BENJAMIN LABOUNTY, | |
| Appellant. | |

MAXA, J. – Matthew LaBounty appeals the imposition of a deadly weapon sentencing enhancement for his two convictions of possession with intent to deliver heroin and methamphetamine. He also appeals his sentence. LaBounty's convictions arose out of an incident where a law enforcement officer stopped him for a traffic violation and discovered drugs in the trunk of the vehicle he was driving. The basis for the deadly weapon enhancement was a set of "metal knuckles" found in the front console area within LaBounty's reach.

We hold that (1) there was sufficient evidence that LaBounty was armed with a deadly weapon at the time of his offenses; (2) the prosecutor's comments were not improper, and even if they were LaBounty waived his challenge by failing to object; (3) as the State concedes, the now-vacated conviction for unlawful possession of a controlled substance should not have been included in LaBounty's offender score; (4) as the State concedes, the trial court must reevaluate the imposition of community custody as part of LaBounty's sentence under existing law; and (5)

as the State concedes, LaBounty's two convictions should be noted as the same criminal conduct on the judgment and sentence.

Accordingly, we affirm the imposition of the deadly weapon sentencing enhancement, but we remand for resentencing. The new judgment and sentence should reflect that LaBounty's two convictions constitute the same criminal conduct.

FACTS

In August 2017, Grays Harbor County Sheriff's Deputy Keith Peterson stopped the vehicle LaBounty was driving because of a traffic infraction. He arrested LaBounty for driving without a license.

After LaBounty had exited the vehicle, Peterson noticed a passenger in the car rummaging beneath her seat. Peterson conducted a protective sweep of the vehicle and saw individual plastic baggies on the passenger-side floor and a set of electronic scales on the driver-side floor. He also saw a set of metal knuckles in the front console area between the driver's seat and the passenger's seat. The metal knuckles were in a place where LaBounty easily could have reached them. After Peterson obtained a warrant, heroin and methamphetamine were found in baggies in the trunk.

LaBounty was charged with possession with intent to deliver heroin and possession with intent to deliver methamphetamine, with deadly weapon enhancements on both charges.

After the State rested at trial, LaBounty moved to dismiss the deadly weapon sentencing enhancements. The trial court denied the motion. The court ruled that there was a sufficient nexus between the drug offenses and the metal knuckles. The court stated, "So if somebody shows up and attempts to take the drugs by force, you put on the brass knuckles and you whack the guy and that goes away." Report of Proceedings (RP) at 204. The court also stated, "[W]hen

2

you're dealing drugs, I mean that's one of the – and then everybody knows what happens if you're selling, you've got to protect yourself, right?" RP at 206.

In closing argument, the prosecutor discussed the metal knuckles. He stated, "Why does he have these? Well, they're for protection. Okay. Because drug dealing is a dangerous business." RP at 241. The prosecutor continued, "Well, who drives around with metal knuckles? Somebody [who's] got something to protect. Somebody [who's] got a reason to use them, like 3,000 dollars worth of drugs in the trunk. Okay. These are for protection while breaking down the drugs and selling them." RP at 241-42. LaBounty did not object to these comments.

Later, the prosecutor stated, "What do you think the defendant with his metal knuckles was there for? He's the muscle. He's the protection." RP at 248. Again, LaBounty did not object.

The jury convicted LaBounty on both counts and on the deadly weapon enhancements. At sentencing, LaBounty's offender score included a prior conviction for unlawful possession of a controlled substance. The trial court apparently treated the two counts as the same criminal conduct for the purposes of sentencing, but the judgment and sentence did not reflect this ruling.[1] The court sentenced LaBounty to the statutory maximum of 120 months, which included 24 months as a deadly weapon enhancement. The judgment and sentence also stated that LaBounty would be on community custody for any early release time.

LaBounty appeals the imposition of the deadly weapon enhancement and his sentence.

---

[1] While both parties agree that the two counts were treated as the same criminal conduct, nothing confirms this in the record of the sentencing hearing.

ANALYSIS

A.      SUFFICIENCY OF EVIDENCE – ARMED WITH A DEADLY WEAPON

LaBounty argues that there was insufficient evidence to support imposition of the deadly weapon enhancement.  We disagree.

1.      Standard of Review

Whether a defendant was armed with a deadly weapon is a mixed question of law and fact, and is fact-specific.  *State v. Sassen Van Elsloo*, 191 Wn.2d 798, 825-26, 425 P.3d 807 (2018).  The test for determining the sufficiency of evidence is whether after viewing the evidence and all reasonable inferences in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt that the defendant was armed.  *Id.* at 826. We decide de novo whether the facts are sufficient as a matter of law to prove that the defendant was armed.  *Id.* at 825.

2.      Legal Principles

Under RCW 9.94A.533(4)[2], the trial court must add time to a sentence if the defendant is found to have been armed with a deadly weapon at the time the offense was committed.  RCW 9.94A.825 expressly includes "metal knuckles" in the definition of "deadly weapon."

To establish that the defendant was armed for purposes of the sentencing enhancement, the State must prove "(1) that a [deadly weapon] was easily accessible and readily available for offensive or defensive purposes during the commission of the crime and (2) that a nexus exists among the defendant, the weapon, and the crime."  *Sassen Van Elsloo*, 191 Wn.2d at 826.

---

[2] 9.94A.533 has been amended since the events of this case transpired.  Because these amendments do not impact the statutory language relied on by this court, we refer to the current statute.

Regarding the first requirement, the presence, close proximity, or constructive possession of a weapon found at a crime scene alone is not enough to establish that the defendant was armed in this context. *Id.* The weapon must be easily accessible and readily available at the time of the crime. *Id.*

Regarding the second requirement, we look to the nature of the crime, the type of weapon, and the context in which it was found to determine if there was a nexus between the defendant, the weapon, and the crime. *Id.* at 827. "[W]hen the crime is of a continuing nature, such as a drug operation, a nexus exists if the firearm is 'there to be used' in the commission of the crime." *Id.* at 828 (quoting *State v. Gurske*, 155 Wn.2d 134, 138, 118 P.3d 333 (2005)).[3] As a result, a sufficient nexus exists if there is evidence that the weapon was present to protect an ongoing drug operation. *State v. O'Neal*, 159 Wn.2d 500, 506, 150 P.3d 1121 (2007); *State v. Eckenrode*, 159 Wn.2d 488, 494-95, 150 P.3d 1116 (2007).

Consistent with this law, the trial court instructed the jury as follows:

A person is armed with a deadly weapon if, at the time of the commission of the crime, the weapon is easily accessible and readily available for offensive or defensive use. The State must prove beyond a reasonable doubt that there was a connection between the weapon and the Defendant or an accomplice. The State must also prove beyond a reasonable doubt that there was a connection between the weapon and the crime. In determining whether these connections existed, you should consider, among other factors, the nature of the crime and the circumstances surrounding the commission of the crime, including the location of the weapon at the time of the crime, and the type of weapon.

CP at 39.

---

[3] While *Sassen Van Elsloo* involved a firearm, *Gurske* stated that a "weapon" must be "there to be used." *Gurske*, 155 Wn.2d at 138.

3. Analysis

Here, the metal knuckles were located in the front console area next to the driver's seat. Peterson testified that they were in a place where LaBounty easily could have reached them. And LaBounty was committing the offense of possession with intent to distribute when he was stopped. Therefore, there is no question that the metal knuckles were "easily accessible and readily available for offensive or defensive purposes during the commission of the crime." *Sassen Van Elsloo*, 191 Wn.2d at 826. LaBounty does not argue otherwise.

LaBounty argues that there is an insufficient nexus among himself, the weapon, and the crime. He claims that there was no connection between the presence of the metal knuckles in the vehicle and his possession of the drugs with intent to deliver. We disagree.

The question here is whether sufficient evidence supports a finding of nexus. "So long as the facts and circumstances support an inference of a connection between the weapon, the crime, and the defendant, sufficient evidence exists." *State v. Easterlin*, 159 Wn.2d 203, 210, 149 P.3d 366 (2006).

Possession with the intent to distribute a controlled substance is a continuing offense. *Sassen Van Elsloo*, 191 Wn.2d at 827; *Gurske*, 155 Wn.2d at 140. Therefore, LaBounty was engaged in that offense when he was stopped. And the metal knuckles, defined as a deadly weapon, were within his reach. Because the offense was a continuing one and the metal knuckles were " 'there to be used' " in the commission of that offense, *Sassen Van Elsloo*, 191 Wn.2d at 828 (quoting *Gurske*, 155 Wn.2d at 138), the jury could draw an inference of a connection between the metal knuckles and possession of the controlled substances with intent to deliver. Therefore, there is sufficient evidence to support a finding that a nexus exists.

Further, the court in *Gurske* noted that in the context of an unlawful possession charge, one of the uses of a deadly weapon could be to protect the drugs. 155 Wn.2d at 139. And the possession of metal knuckles is unlawful, RCW 9.41.250(1)(a), meaning that LaBounty had no alternative legitimate reason to have them in the vehicle. Viewed in the light most favorable to the State, a reasonable inference is that the metal knuckles were there to protect the drugs in the vehicle.

This case is similar to *Sassen Van Elsloo*. In that case, a search of the defendant's car revealed controlled substances, evidence that the defendant was selling drugs, and a shotgun in the cargo hold. *Sassen Van Elsloo*, 191 Wn.2d at 802-03. There also was evidence that the defendant was selling illegal drugs from the car. *Id.* at 829-30. The court held that there was a sufficient nexus between the shotgun and the defendant's ongoing possession and distribution of the drugs because the shotgun could be easily grabbed by someone entering the car and it was less than a foot from the drugs. *Id.* at 830. This was sufficient evidence for the court to conclude that the shotgun was " 'there to be used' " in the commission of the defendant's possession and distribution offense. *Id.* (quoting *Gurske*, 155 Wn.2d at 138).

LaBounty makes several arguments, but they do not compel a different conclusion. First, he emphasizes that being arrested near a weapon is not sufficient to support a finding that a defendant was armed for purposes of the sentencing enhancement. He cites to *Gurske*, 155 Wn.2d at 143-44, and *State v. Valdobinos*, 122 Wn.2d 270, 281-82, 858 P.2d 199 (1993), both cases in which the court found insufficient evidence to support a finding that the defendant was armed. However, the basis of the holding in both cases was that the weapon was not accessible and readily available, not that there was an insufficient nexus. *Gurske*, 155 Wn.2d at 143-44 (unloaded firearm in zipped backpack was behind the defendant's seat); *Valdobinos*, 122 Wn.2d

at 282 (unloaded firearm was under the bed in the defendant's bedroom). Here it is undisputed that the metal knuckles were accessible and readily available.

Second, LaBounty argues that unlike in *Sassen Van Elsloo*, there is no evidence that he was selling drugs at the time of his arrest. He emphasizes that in *Sassen Van Elsloo*, the defendant's passenger admitted that she and the defendant were selling drugs from their car. 191 Wn.2d at 830. However, contrary to LaBounty's argument, here there was evidence that LaBounty was selling drugs from the vehicle. Officer Peterson testified that there were electronic scales on the driver-side floor and individual plastic baggies on the passenger-side floor. And there was heroin and methamphetamine in baggies in the trunk. Viewed in the light most favorable to the State, a reasonable inference is that LaBounty was selling drugs from the vehicle.

Third, LaBounty argues that there was no evidence that the metal knuckles were the type of weapon commonly used to further a drug selling operation. And he points out that there is no evidence that he ever used the metal knuckles against anyone. But whether other people use metal knuckles when selling drugs is immaterial. As noted above, a reasonable inference is that LaBounty possessed the metal knuckles to protect the drugs in the vehicle. And there is no requirement that the weapon actually be used to support the sentencing enhancement. The only requirement is that the defendant be *armed* with a deadly weapon. RCW 9.94A.533(4).

Fourth, LaBounty argues that he was not involved in ongoing drug production operations as in *O'Neal*, 159 Wn.2d at 506-07 (holding that guns present where methamphetamine was being manufactured were there to protect the drug operation), and *Eckenrode*, 159 Wn.2d at 494 (holding that guns present in a house with a large cannabis grow operation were there to protect the criminal enterprise). But although the nexus may be clearer when there is an extensive drug

production operation, an extensive operation is not required to find a sufficient nexus. As noted above, *Sassen Van Elsloo* found a nexus when the weapon and evidence of drug sales were in a single vehicle. 191 Wn.2d at 830.

We hold that the evidence is sufficient to support the jury's verdict that LaBounty was armed with a deadly weapon at the time of his offenses of possession of heroin and methamphetamine with intent to deliver.

B.      PROSECUTORIAL MISCONDUCT

LaBounty argues that the prosecutor committed misconduct during closing argument by speculating about the dangerousness of drug dealing and the purpose for the metal knuckles. We disagree.

To establish prosecutorial misconduct, a defendant must show that the prosecutor's conduct was both improper and prejudicial in the context of all the circumstances of the trial. *State v. Zamora*, 199 Wn.2d 698, 708, 512 P.3d 512 (2022). A prosecutor commits misconduct during oral argument by arguing facts not in evidence. *See In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 705, 286 P.3d 673 (2012). However, during closing argument the prosecutor is given wide latitude to assert reasonable inferences from the evidence. *State v. Slater*, 197 Wn.2d 660, 680, 486 P.3d 873 (2021).

When the defendant fails to object at trial, a heightened standard of review requires the defendant to show that the conduct was " 'so flagrant and ill intentioned that [a jury] instruction would not have cured the [resulting] prejudice.' " *Zamora*, 199 Wn.2d at 709 (quoting *State v. Loughbom*, 196 Wn.2d 64, 70, 470 P.3d 499 (2020)). The focus of this heightened standard is whether an instruction would have cured the prejudice. *State v. Crossguns*, 199 Wn.2d 282, 299, 505 P.3d 529 (2022). "In other words, the defendant who did not object must show the improper

conduct resulted in *incurable* prejudice." *Zamora*, 199 Wn.2d at 709. If a defendant fails to make this showing, the prosecutorial misconduct claim is waived.

Here, LaBounty argues that the prosecutor argued facts not in evidence by stating that "drug dealing is a dangerous business," RP at 241, that the metal knuckles were needed for protection when breaking down and selling the drugs, and that LaBounty was the "muscle" and "the protection," RP at 248. He emphasizes that there was no evidence that metal knuckles are associated with drug dealing or that drug dealing is inherently dangerous. Therefore, prosecutor's comments were based only on a speculative profile about people who commit drug offenses.

However, it is within common knowledge that drug dealing can be dangerous. A prosecutor does not commit misconduct by making statements that are within the jury's common knowledge. *See In re Pers. Restraint of Phelps*, 190 Wn.2d 155, 166-70, 410 P.3d 1142 (2018) (holding that the prosecutor could discuss the concept of "grooming" in the absence of evidence regarding grooming because the concept was within the common knowledge of jurors). In addition, in light of the wide latitude given to prosecutors, the prosecutor could reasonably infer that the metal knuckles were for the purpose of providing protection for drug dealing activities and that LaBounty was the person who provided that protection. We conclude that the prosecutor's statements were not improper.

Even if these statements were improper, LaBounty did not object to them.[4] LaBounty has not shown that the statements were so flagrant and ill-intentioned as to be incurable. Given the common knowledge about the nature of drug dealing, the statements were not particularly

---

[4] LaBounty argues that he was not required to object because the trial court essentially approved of similar statements when ruling on his motion to dismiss. Therefore, any objection would have been futile. We disagree.

inflammatory and the jury could have been instructed to disregard them. Therefore, we conclude that LaBounty cannot establish that the statements resulted in incurable prejudice and, as such, his prosecutorial misconduct claim is waived.

C.      IMPROPER OFFENDER SCORE

LaBounty's offender score included a conviction for unlawful possession of a controlled substance. As the State concedes, we vacated this conviction in LaBounty's prior appeal pursuant to *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021). *State v. LaBounty*, No. 53551-3-II, slip op. at 2 (Wash. Ct. App. May 4, 2021),

https://www.courts.wa.gov/opinions/pdf/D2%2053551-3-II%20Unpublished%20Opinion.pdf

[*LaBounty* I]. Therefore, LaBounty is entitled to be resentenced with a corrected offender score.

D.      COMMUNITY CUSTODY FOR EARLY RELEASE TIME

The trial court sentenced LaBounty to the statutory maximum (120 months) and community custody for any early release time. As the State concedes, we held in LaBounty's prior appeal that the trial court can impose community custody for early release time only if "(1) LaBounty is subject to [Department of Corrections] supervision under RCW 9.94A.501, and (2) the court sentences him to a fixed term of community custody." *State v. LaBounty*, 17 Wn. App. 2d 576, 588, 487 P.3d 221 (2021) [*LaBounty* II]. Otherwise, the trial court is not allowed to impose a total term of confinement and community custody that exceeds the statutory maximum. RCW 9.94A.505(5)[5].

On remand, the trial court can impose community custody only if consistent with *LaBounty* II and RCW 9.94A.505(5).

---

[5] 9.94A.505(5) has been amended since the events of this case transpired. Because these amendments do not impact the statutory language relied on by this court, we refer to the current statute.

E.       SAME CRIMINAL CONDUCT NOTATION

As the State concedes, the trial court ruled that LaBounty's possession with the intent to distribute heroin and possession with intent to distribute methamphetamine constituted the same criminal conduct.  However, the judgment and sentence does not reflect this ruling.  On remand, the trial court should note on the judgment and sentence that the two convictions constituted the same criminal conduct.

The trial court used a judgment and sentence form that did not include a box to indicate that the current offenses were treated as the same criminal conduct.  This box is contained in section 2.1 in the current template judgment and sentence form.

## CONCLUSION

We affirm the imposition of LaBounty's deadly weapon sentencing enhancement, but we remand for resentencing.  The new judgment and sentence should reflect that LaBounty's two convictions constitute the same criminal conduct.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, J.

We concur:

_____
GLASGOW, C.J.

_____
CRUSER, J.

12