# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>JAKE MICHAEL BELANGER,<br><br>Appellant. | No.  51399-4-II<br><br><br><br>UNPUBLISHED OPINION |

SUTTON, J. — Jake M. Belanger was under community custody when law enforcement received information that he had a Department of Corrections (DOC) warrant for failure to report and could be found at a Tacoma park.  Following his arrest at the park and subsequent jury trial, Belanger appeals his convictions for two counts of possession of a controlled substance with intent to deliver, each with two firearm enhancements; one count of possession of a controlled substance; and two counts of first degree unlawful possession of a firearm.  Belanger argues that (1) the trial court erred when it denied his CrR 3.6 motion to suppress evidence obtained during a warrantless community custody search of his vehicle, (2) the State produced insufficient evidence to prove that he was "armed" for purposes of the firearm enhancements, (3) the trial court abused its discretion by doubling the maximum sentence length for the unlawful possession with intent to deliver controlled substances convictions, and (4) the trial court improperly imposed legal financial obligations (LFOs).

In a statement of additional grounds (SAG), Belanger also asserts that the trial court erred by denying his motion to suppress because the search of his vehicle violated his passenger's third-

party privacy interests, and the trial court failed to properly inquire into the reliability of the informant who told law enforcement that Belanger would be at the park. Belanger also asserts that the trial court erred by granting the State's motion for reconsideration of the court's decision to dismiss the firearm sentencing enhancements.

We affirm and remand to the sentencing court to address the LFOs in light of new law.

FACTS

I. BACKGROUND

In November 2016, Belanger was under community custody, and his conditions included no possession of controlled substances, no possession of firearms, and the duty to report to the DOC as directed. On November 7, 2016, Pierce County Deputy Seth Huber received information that Belanger had a DOC warrant for failure to report to DOC and that Belanger could be found near a park in the Proctor area of Tacoma. Deputies Huber and Jason Bray, and Community Custody Officers (CCO) Thomas Grabski and Mike Poston planned to contact Belanger at the park.

As the law enforcement officers approached the park, they confirmed that Belanger was present and proceeded to box in Belanger's vehicle to prevent his escape. Belanger resisted, but the officers ultimately detained Belanger. Deputy Huber searched Belanger's person and discovered methamphetamine, heroin, alprazolam pills, a used glass pipe, and a large sum of cash. Deputy Huber advised Belanger of his constitutional rights and arrested Belanger.

After the discovery of drugs on Belanger's person, CCO Grabski conducted a search of Belanger's vehicle to verify whether Belanger was complying with the conditions of his community custody. CCO Grabski discovered a safe on the driver's side floorboard containing a

loaded .38 handgun; a safe behind the driver's seat containing heroin, methamphetamine, and baggies for packaging; a backpack laying on the rear seat containing a .22 handgun; and ammunition for the handgun was located in a clothin bin.

When questioned about the items discovered in the vehicle, Belanger explained that he had previously been employed but was no longer working and that he "does what it takes to make ends meet," including selling methamphetamine, heroin, and pills to make money. Report of Proceedings (RP) at 548-49. Belanger stated that everything in the vehicle belonged to him, including the firearms, which he used for self-protection and to keep from getting robbed. Belanger acknowledged that it was illegal for him to possess a gun.

The State charged Belanger with three counts of unlawful possession of a controlled substance with intent to deliver, each with two firearm sentencing enhancements. The State also charged Belanger with two counts of first degree unlawful possession of a firearm.

## II. CrR 3.6 HEARING

Belanger filed a motion to suppress under CrR 3.6, arguing that the evidence collected as a result of CCO Grabski's search of Belanger's vehicle should be suppressed.

At a hearing on the motion, testimony from CCO Grabski and Deputy Huber was consistent with the above facts. Specifically, CCO Grabski testified as follows. In November 2016, law enforcement received information that Belanger was going to be in the North Proctor area on the evening of November 7, with drugs and likely with a firearm. CCO Grabski learned that Belanger had an active DOC felony warrant and would be driving a white Pontiac Grand Am.

On November 7, CCO Grabski coordinated with other law enforcement officers to arrest Belanger. That day, CCO Grabski saw Belanger driving a white Pontiac Grand Am with a woman

in the passenger seat. CCO Grabski's and CCO Poston's vehicles converged on Belanger's vehicle and boxed Belanger in. Belanger put his vehicle in reverse, striking CCO Poston's vehicle, then put his vehicle in drive, striking CCO Grabski's vehicle.

Once Belanger was unable to move his vehicle, CCO Grabski and CCO Poston exited their vehicles and attempted to remove Belanger from his vehicle. Belanger resisted arrest, lunging his hands down towards the floorboard of the vehicle. CCO Grabski explained:

> Anytime that you are giving a command to somebody or a directive to, you know, comply, and they are failing to do so and then they are reaching into an unknown area that you can't see is a concern for anybody.
>
>  . . . .
>
> I don't think that I was thinking that there was a weapon on the floorboard. I am thinking that I need to get this guy in cuffs. I mean, I'm just controlling hands, controlling the body, getting him into cuffs, and then I can sort out everything else after the fact.

RP at 41. Eventually the officers succeeded in getting Belanger out of the vehicle and into restraints. CCO Grabski described Belanger as non-compliant for "a minute maybe." "[Belanger] kept trying to stand up. He wanted to get away. He wasn't fighting with us, throwing punches at us, or anything crazy like that, but he just did not want to be there. He was trying to . . . get away from there." RP at 42.

The State asked CCO Grabski, "Given your training and experience over the last 15 years, was that an indication that perhaps [Belanger] was in violation of his terms of community custody, the desire to get away?" RP at 44. CCO Grabski replied,

> When somebody is trying to get away from a vehicle or tries to distance themselves from a vehicle like that, it usually means there is something in the vehicle, yes. Not always is there something, but odds are.

4

. . . .

> [S]omething in violation of the probation, such as a firearm or narcotics or something of that nature.

RP at 44. The officers searched Belanger incident to arrest, which resulted in the discovery of methamphetamines, heroin, and pills. CCO Grabski believed it reasonably likely that additional drugs and/or weapons could be found in Belanger's vehicle.

CCO Grabski explained that he decided to do a DOC compliance check of the vehicle based on the fact that Belanger had controlled substances on his person, as well as Belanger's behavior, resisting arrest, and attempt to distance himself from the vehicle. During his search, CCO Grabski discovered a black safe containing a silver handgun on the driver's side floorboard; a black and gray safe behind the driver's seat containing heroin, methamphetamine, and baggies for packaging; a black backpack laying on the rear seat of the vehicle containing a silver handgun; and ammunition in a clothes bin on the backseat. CCO Grabski could not remember how he opened the safes.

Deputy Huber testified that around November 7, 2016, he was informed that he might find Belanger near a park in Tacoma where Belanger often sold drugs and that Belanger would likely be armed with a firearm. As Deputy Huber approached Belanger's vehicle at the park, he witnessed Belanger reaching around inside of the car. When Belanger refused to comply with commands, Deputy Huber used his electronic control device. Deputy Huber explained that he chose to use his electronic control device because "[f]irst off was the information that Mr. Belanger may be armed. He was a violent felon. He was wanted on a felony warrant that cautioned him as a violent offender. Secondly, he was reaching down towards the floorboard." RP at 97. Belanger

continued to resist arrest despite Deputy Huber using the electronic control device three times. Eventually, CCO Poston and CCO Grabski removed Belanger from the vehicle, but Belanger continued to resist and attempted to stand up for several minutes. Deputy Heber testified that "[e]ven once [Belanger] was secured in [hand]cuffs, he continued to twist his body, stand up, look for avenues of escape." RP at 100-01.

After the drugs and firearms were confiscated from Belanger's vehicle, Deputy Huber questioned Belanger about the items. Belanger told Deputy Huber that he sold drugs to make ends meet and that he used the guns for "self-protection and to keep him[self] from being robbed." RP at 110-11.

The trial court ruled that given the drugs found on Belanger's person and his behavior reaching around the vehicle before arrest, CCO Grabski had a reasonable suspicion that there may be additional drugs or weapons in the vehicle in violation of Belanger's community custody conditions. Consequently, the trial court denied Belanger's CrR 3.6 motion to suppress.

### III. MOTION TO DISMISS & RECONSIDERATION

Following the close of evidence at trial, Belanger moved to dismiss the firearm sentencing enhancements. Relying on *State v. Gurske*[1] for support, Belanger argued that the State produced insufficient evidence that Belanger was armed.. The trial court granted Belanger's motion to dismiss the firearm sentencing enhancements based on the .22 handgun, which was located in a backpack in the back of Belanger's vehicle, but denied the motion to dismiss the firearm sentencing enhancements based on the .38 handgun, which was on the driver's side floorboard.

---

[1] 155 Wn.2d 134, 118 P.3d 333 (2005).

The following day, the State moved for reconsideration of the trial court's decision to dismiss the firearm sentencing enhancements as to the .22 handgun. The State presented additional case law and argued that the firearm sentencing enhancements should not be dismissed. The trial court reconsidered its decision and denied the motion to dismiss the firearm sentencing enhancements.

IV. CONVICTION & SENTENCING

The jury found Belanger guilty of two counts of unlawful possession of a controlled substance with intent to deliver, each with two firearm enhancements. The jury also found Belanger guilty of a lesser charge of unlawful possession of a controlled substance without any enhancements, and two counts of first degree unlawful possession of a firearm.

At the sentencing hearing, the State argued that because of Belanger's prior drug convictions, the trial court should apply RCW 69.50.408 to double the statutory maximum of Belanger's sentence. By doubling the statutory maximum, the trial court would be authorized to impose 60 months confinement for each firearm enhancement, as opposed to 36 months. Belanger objected and sought an exceptional downward sentence, arguing that the State's recommendation would impose a lengthy sentence disproportionate to Belanger's nonviolent offense.

The trial court doubled the statutory maximum for the two unlawful possession with intent to deliver convictions, and sentenced Belanger to 100+ months confinement on each unlawful possession with intent to deliver convictions, 116 months confinement on the two unlawful possession of a firearm convictions, and 24 months on the unlawful possession of a controlled substance conviction, with all sentences to be served concurrently. The trial court also imposed 60 months confinement on each of the four firearm sentencing enhancements to be served

7

consecutively to each other and as flat time. Ultimately, the trial court imposed a 356-month term of incarceration, with 240 months to be served as flat time firearm sentencing enhancements. The trial court found Belanger indigent and imposed mandatory LFOs.

Belanger timely appeals.

## ANALYSIS

### I. MOTION TO SUPPRESS

Belanger argues that the trial court erred by denying his motion to suppress because there was no nexus between Belanger's suspected probation violations and his vehicle. We disagree.

Following a suppression hearing, we review challenged findings of fact to determine whether they are supported by substantial evidence. *State v. O'Neill*, 148 Wn.2d 564, 571, 62 P.3d 489 (2003). Unchallenged findings are verities on appeal, and challenged findings supported by substantial evidence are binding. *O'Neill*, 148 Wn.2d at 571. We review the trial court's conclusions of law following a suppression hearing de novo. *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014). We affirm conclusions of law that are supported by the findings of fact. *State v. Vickers*, 148 Wn.2d 91, 116, 59 P.3d 58 (2002).

### A. SUBSTANTIAL EVIDENCE SUPPORTS CHALLENGED FINDINGS OF FACT

First, we review the challenged findings of fact to determine whether they are supported by substantial evidence. Belanger assigns error to two of the trial court's findings of fact 60 and 61:

> (60) Officer Grabski knows, based on his training and experience, that offenders will keep weapons such as knives, guns, and brass knuckles on or near their persons.

(61) Officer Grabski believed, based on his training and experience, that given the defendant's behavior of reaching towards the driver's floorboard of his vehicle during the initial struggle, there was possibly a weapon the defendant was prohibited from possessing in that location.

Clerk's Papers (CP) at 254.

CCO Grabski testified that based on his training and experience, he has found many offenders who keep contraband such as "[g]uns, meth[amphetamine], heroin, pills, cocaine . . . . Things of that nature." RP at 47. While his testimony did not expressly mention knives or brass knuckles, that portion of the trial court's finding of fact was merely superfluous, providing examples of other "things of that nature." CCO Grabski's testimony provides substantial evidence to support the trial court's finding of fact 60.

CCO Grabski also testified that based on his training and experience, taking into account Belanger's behavior of reaching around the vehicle, it was reasonably likely that a weapon could have been in the vehicle. There was substantial evidence to support the trial court's finding of fact 61.

B. WARRANTLESS SEARCH

Next, we review the trial court's conclusions of law de novo to determine if they are supported by the findings of fact. Belanger assigns error to the trial court's conclusions of law 4 and 6. Conclusion of law 4 states:

There was a nexus between the defendant's violations—the possession of narcotics, the attempted flight from DOC officers and the Pierce County Sheriff's Department, the failure to appear to DOC, the apparent attempts to reach for a weapon in the driver's floorboard of the vehicle—and the place that was searched—the defendant's vehicle.

9

CP at 261. Conclusion of law 6 denied Belanger's motion to suppress.

Article I, section 7 of the Washington Constitution states that "[n]o person shall be disturbed in his private affairs . . . without authority of law." CONST. art. 1, § 7. The term "authority of law" refers to a valid warrant, subject to limited exceptions. *State v. Cornwell*, 190 Wn.2d 296, 301, 412 P.3d 1265 (2018).

However, "individuals on probation are not entitled to the full protection of article I, section 7" because they have reduced expectations of privacy. *Cornwell*, 190 Wn.2d at 301. Probationers have diminished privacy rights because, while they continue to serve their sentence in the community, they remain in the custody of the law even though they have been released from confinement. *State v. Reichert*, 158 Wn. App. 374, 386, 242 P.3d 44 (2010). The same principles apply to offenders released from confinement who are subject to community custody conditions. *State v. Rooney*, 190 Wn. App. 653, 659, 360 P.3d 913 (2015).

A CCO may search an individual without a warrant if the CCO has a "'well-founded or reasonable suspicion of a probation violation.'" *Cornwell*, 190 Wn.2d at 302 (quoting *State v. Winterstein*, 167 Wn.2d 620, 628, 220 P.3d 1226 (2009)); *see also* RCW 9.94A.631(1) (allowing a CCO to conduct a warrantless search if he or she has "reasonable cause to believe that an offender has violated a condition or requirement of the sentence"). A reasonable suspicion exists if specific and articulable facts suggest that there is a substantial possibility a violation occurred. *See State v. Jardinez*, 184 Wn. App. 518, 524, 338 P.3d 292 (2014). In addition, probationers retain some expectation of privacy, and the State's authority to search probationers without a warrant is limited to property that bears a nexus to the suspected probation violation. *Cornwell*, 190 Wn.2d at 306.

Applying the nexus requirement to this case, we conclude that CCO Grabski's search of Belanger's vehicle was lawful. Belanger's failure to report to DOC resulted in a warrant for his arrest. The lawful search of Belanger's person incident to arrest resulted in the discovery of heroin, methamphetamine, and alprazolam pills, in violation of Belanger's community custody conditions. CCO Grabski testified that in his experience, a person with controlled substances on his person may have additional controlled substances in the person's vehicle. Additionally, as law enforcement approached Belanger, he was seen reaching down towards the driver's floorboard of the vehicle and CCO Grabski believed there was a possibility he was reaching for a weapon he was prohibited from possessing.

Thus, the findings of fact support the trial court's conclusion that a sufficient nexus existed between Belanger's vehicle and the probation violations of possessing controlled substances and possessing a firearm. As such, CCO Grabski's search of Belanger's vehicle was not unlawful and the trial court did not err by denying Belanger's motion to suppress.

## II. FIREARM ENHANCEMENTS

Belanger argues that the State failed to produce sufficient evidence to support the firearm enhancements because it failed to prove that the guns found in his vehicle were easily accessible and readily available for use. We disagree.

The test for determining sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Cardenas-Flores*, 189 Wn.2d 243, 265, 401 P.3d 19 (2017). In a sufficiency of the evidence claim, the defendant admits the truth of the evidence and the court views the evidence and all reasonable inferences drawn from that evidence in the light most

favorable to the State. *Cardenas-Flores*, 189 Wn.2d at 265-66. Credibility determinations are made by the trier of fact and are not subject to review. *Cardenas-Flores*, 189 Wn.2d at 266. Circumstantial and direct evidence are equally reliable. *Cardenas-Flores*, 189 Wn.2d at 266.

Under RCW 9.94A.533(3), a court must add additional time to a sentence if the defendant is found to have been armed with a firearm while committing the crime. *State v. Houston-Sconiers*, 188 Wn.2d 1, 16-17, 391 P.3d 409 (2017). "To establish that a defendant was armed for the purpose of a firearm enhancement, the State must prove (1) that a firearm was easily accessible and readily available for offensive or defensive purposes during the commission of the crime and (2) that a nexus exists among the defendant, the weapon, and the crime." *State v. Van Elsloo*, 191 Wn.2d 798, 826, 425 P.3d 807 (2018).

"The defendant does not have to be armed at the moment of arrest to be armed for purposes of the firearms enhancement." *State v. O'Neal*, 159 Wn.2d 500, 504, 150 P.3d 1121 (2007). "[T]he State need not establish with mathematical precision the specific time and place that a weapon was readily available and easily accessible, so long as it was at the time of the crime." *O'Neal*, 159 Wn.2d at 504-05. A drug distribution operation is a continuing crime that is ongoing. *See State v. Neff*, 163 Wn.2d 453, 464-65, 181 P.3d 819 (2008).

Belanger relies heavily on our Supreme Court's opinion in *State v. Gurske* to support his argument. 155 Wn.2d 134, 118 P.3d 333 (2005). However, *Gurske* is distinguishable.

Gurske was convicted of possession of a controlled substance and a deadly weapon sentence enhancement for a pistol found in a backpack in his truck when he was arrested. *Gurske*, 155 Wn.2d at 136-37. In *Gurske*, the parties stipulated to the facts, including that the gun found in a backpack by officers was "not removable by the driver without first either exiting the vehicle

or moving into the passenger seat location." 155 Wn.2d at 136. Because Gurske could not reach the gun and there was no evidence that Gurske had used or had access to use the gun at any other time when he acquired or was in possession of the methamphetamine, the Supreme Court held that insufficient evidence supported the deadly weapon sentencing enhancement. *Gurske*, 155 Wn.2d 143-44.

Here, Belanger was charged and convicted of possession of controlled substance with intent to deliver. The State presented evidence that the .38 handgun was found in a safe on the driver's side floorboard, which Belanger was actively reaching towards as law enforcement officers attempted to detain him. The .22 handgun was found in a backpack in the backseat of the vehicle near the safe containing drugs, baggies, and scales. Belanger admitted to the police that he was selling drugs to make money and had the guns for self-protection. In viewing the evidence most favorable to the State, a reasonable jury could have found beyond a reasonable doubt that the guns were readily accessible and available to Belanger. Belanger possessed drugs with the intent to deliver them at the time of his arrest, he admitted that he had the guns for self-protection because of his drug dealing, and he reached for the guns when he was stopped. *See State v. Simonson*, 91 Wn. App. 874, 883, 960 P.2d 955 (1998) (holding that where defendants were committing a continuing offense over a six-week period, and during some or all of that time they kept guns on the premises, it could be inferred that the guns were used to defend the drug operation).

Because Belanger's firearms were found near the evidence of his drug sale operation, a reasonable jury could conclude that these guns were readily accessible and available to Belanger during his continuing possession with intent to deliver offenses. Moreover, CCO Grabski testified that both firearms could have been within Belanger's reach while seated in the driver's seat.

Accordingly, taking the evidence in the light most favorable to the State, we hold that there is sufficient evidence to support the firearm sentencing enhancements.

### III. DOUBLED MAXIMUM SENTENCE

Belanger argues that the trial court abused its discretion by applying RCW 69.50.408 to double the maximum sentence length for the unlawful possession with intent to deliver controlled substances convictions. We disagree.

In *State v. Cyr*, we concluded that the application of RCW 69.50.408 was not within the trial court's discretion. *See generally State v. Cyr,* 8 Wn. App. 2d 834, 441 P.3d 1238 (2019). In *Cyr*, we held that where a defendant has a prior conviction under chapter 69.50 RCW, RCW 69.50.408 automatically applies to double the statutory maximum sentence. 8 Wn. App. 2d at 836. Thus, here, the trial court did not have discretion to treat the 10 years as the maximum sentence for the unlawful possession of controlled substances with intent to deliver convictions. The statutory maximum sentence automatically doubled to 20 years under RCW 69.50.408.

The trial court's discretion involved what sentence to actually impose within the doubled maximum and the standard range, which it exercised by imposing the low end of the standard sentence range for the unlawful possession of controlled substances with intent to deliver convictions. *See Cyr*, 8 Wn. App. 2d at 836.

Because the trial court did not have the discretion to decline to double the maximum sentence under RCW 69.50.408, Belanger's argument fails.

### IV. LEGAL FINANCIAL OBLIGATIONS

In 2018, the legislature amended the statutory landscape of LFOs. LAWS OF 2018, ch. 269. The recent legislation applies prospectively to defendants, like Belanger, whose cases were

pending appellate review and were not yet final when the legislation was enacted. *State v. Ramirez*, 191 Wn.2d 732, 747-49, 426 P.3d 714 (2018). The parties agree that the trial court improperly imposed LFOs in light of the 2018 legislative amendments and *Ramirez*.[2] Accordingly, we remand this case to the sentencing court to address the imposition of LFOs consistent with the 2018 legislative amendments to the LFO provisions and *Ramirez*.

## STATEMENT OF ADDITIONAL GROUNDS

### I. THIRD PARTY PRIVACY INTERESTS

In his SAG, Belanger argues that the trial court erred by denying his CrR 3.6 motion to suppress because the search of his vehicle violated third party privacy interests. We disagree.

Under RCW 9.94A.631(1), a CCO may require a probationer to submit to the search of his vehicle if the CCO has a reasonable belief that the person has violated a condition of his community custody sentence. A search under the probationer exception remains valid as long as the CCO relies on specific facts—and inferences drawn therefrom—that establish the property searched belongs to the probationer. *State v. McKague*, 143 Wn. App. 531, 542, 178 P.3d 1035 (2008).

Here, CCO Grabski had specific and articulable facts that led him to believe the vehicle belonged to Belanger. Belanger does not challenge the trial court's findings that Belanger admitted

---

[2] The State specifically concedes that the trial court improperly imposed the criminal filing fee and DNA collection fee. The State notes that it "has reason to believe that a DNA sample has been taken from the defendant on a separate case" and requests that we remand with instructions to amend the judgment and sentence striking the fee. Br. of Resp't at 26. But the record on appeal is silent as to whether Belanger's DNA has previously been collected.

the vehicle and everything in the vehicle belonged to him. Thus, Belanger fails to establish that the search implicated or violated any third party privacy interest.

## II. *AGUILAR-SPINELLI*

Belanger also argues that the trial court erred by denying his CrR 3.6 motion to suppress without conducting a proper *Aguilar-Spinelli*[3] test to determine the reliability of the informant who told the officers Belanger would be at the park selling drugs while armed. However, because the informant's information did not form the basis of the reasonable suspicion leading to CCO Grabski's search, we hold that the trial court did not need to conduct a full *Aguilar-Spinelli* test.

When the source of the information supporting the request for a search warrant is an unnamed informant, the complaint for a search warrant must satisfy the two-pronged *Aguilar–Spinelli* test. *State v. Cole*, 128 Wn.2d 262, 287, 906 P.2d 925 (1995); *State v. Salinas*, 119 Wn.2d 192, 199–200, 829 P.2d 1068 (1992). Under *Aguilar–Spinelli*, the complaint for a search warrant must establish (1) the basis for the informant's knowledge and (2) the informant's veracity and reliability. *State v. Tarter*, 111 Wn. App. 336, 340, 44 P.3d 899 (2002). An informant's tip must also carry some indicia of reliability when the tip generates the requisite level of suspicion to justify a warrantless search under RCW 9.94A.631(1) of a person on community custody. *State v. Z.U.E.*, 178 Wn. App. 769, 780-81, 315 P.3d 1158 (2014), *aff'd* 183 Wn.2d 610 (2015).

Here, CCO Grabski's search of Belanger's vehicle was not based on information CCO Grabski gained from the informant. Rather, CCO Grabski's search resulted from the discovery of various controlled substances and a significant amount of cash on Belanger's person during his

---

[3] *Spinelli v. United States*, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969); *Aguilar v. Texas*, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964).

search incident to arrest. The informant's tip served only to clue law enforcement in to where they could find Belanger, who had missed his parole check-in and had an arrest warrant; it did not form the basis of CCO Grabski's reasonable suspicion to search Belanger's car.[4] Consequently, the trial court did not err.

### III. RECONSIDERATION

Belanger also argues that the trial court abused its discretion when it upheld the firearm enhancements on reconsideration. Specifically, Belanger argues that the trial court violated stare decisis by not following our Supreme Court's decision in *Gurske*. We disagree.

Here, the trial court thoughtfully considered *Gurske*, as well as several more recent Supreme Court opinions. Contrary to Belanger's contention in his SAG, the trial court did not "[make] a decision that is directly in conflict with *Gurske*." SAG at 7. Rather, it considered *Gurske* and found the facts of this case distinguishable. As previously discussed, we agree with the trial court that this case is distinguishable from *Gurske*.

Belanger also takes issue with the trial court's consideration of *State v. Van Elsloo*—an unpublished appellate court case. *State v. Van Elsloo*, 197 Wn. App. 1060 (2017). It is true that an unpublished appellate case does not control over a Supreme Court case. However, here, the trial court's consideration of *Van Elsloo* was as an example of the application of Supreme Court case law post-*Gurske*. Further, our Supreme Court has since affirmed the Court of Appeals'

---

[4] Notably, Belanger does not challenge the trial court's conclusion that "[i]nformation provided to the officers about the defendant's location and what he was driving was corroborated by the officers, and the officers developed information during their investigation that was independent of the information provided to them prior to the incident." CP 261.

reasoning in *Van Elsloo* in an opinion issued after Belanger's trial. *See Van Elsloo*, 191 Wn.2d at 798.

Accordingly, we hold that the trial court did not abuse its discretion by concluding that the facts of this case were distinguishable from *Gurske* and granting the State's motion for reconsideration of the dismissal of the firearm sentencing enhancements.

We affirm Belanger's convictions but remand for the trial court to address the LFOs.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

MELNICK, P.J.

GLASGOW, J.