IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 53151-8-II |
| Respondent, | |
| v. | |
| ALEJANDRO ANAYA-CABRERA, | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, J. — Alejandro Anaya-Cabrera appeals his convictions for unlawful possession of methamphetamine, unlawful possession of heroin, and carrying a concealed pistol without a license. Anaya-Cabrera also appeals the jury's finding that he was armed with a firearm during the commission of his possession crimes. Anaya-Cabrera argues that (1) the trial court erred by denying his motion to suppress evidence discovered after he was seized, (2) the State relied on inadmissible profile testimony to convict him of the firearm sentencing enhancements, (3) he received ineffective assistance of counsel because his counsel failed to object to the profile testimony, and (4) the State presented insufficient evidence to impose the firearm sentencing enhancements. Anaya-Cabrera raises additional issues in his statement of additional grounds (SAG).

We hold that (1) the trial court properly denied Anaya-Cabrera's suppression motion, (2) the State did not rely on profile testimony to convict him of the firearm sentencing enhancement, (3) Anaya-Cabrera's counsel did not render ineffective assistance, and (4) the State presented sufficient evidence to support the firearm sentencing enhancements. We also hold that the issues Anaya-Cabrera raises in his SAG lack merit.

Accordingly, we affirm.

FACTS

On September 7, 2018, Deputy Keith Peterson of the Grays Harbor County Sheriff's Office responded to a call regarding a possible disturbance at the property of William Hagara. Peterson was familiar with the Hagara property and referred to it as the "Hagara shop property." Clerk's Papers (CP) at 16 (internal quotation marks omitted). Dispatch informed Peterson that the disturbance involved Hagara and a Latino male. The nature of the disturbance was somewhat unclear, but Peterson understood that the disturbance involved the male preventing Hagara from leaving the property or that the male was taking items from the property without permission from Hagara.

About a quarter mile from the property, Peterson turned off the highway and began traveling down the hill toward the Hagara property when he saw a silver Avalanche pickup truck traveling up the hill. Peterson recognized the driver of the truck as Anaya-Cabrera, a Latino male whom he had arrested a few weeks prior. During the arrest a few weeks prior, Anaya-Cabrera was interviewed by police officers. Anaya-Cabrera told the officers that he either had recently moved or was in the process of moving out of Hagara's property. Anaya-Cabrera also mentioned a dispute between him and Hagara involving rent or getting kicked off of the property.

2

Based on his knowledge of Anaya-Cabrera's association with the Hagara property and Anaya-Cabrera's recent conflict with Hagara, Peterson believed that Anaya-Cabrera may have been involved in the disturbance when he saw him driving away from the property. Peterson turned around and activated his lights to detain Anaya-Cabrera. Peterson followed Anaya-Cabrera to a nearby traffic light where the traffic was stopped. Anaya-Cabrera rolled down his window and told Peterson that he would meet him "back down at the gate." *Id.* at 18 (internal quotation marks omitted). Peterson knew that the Hagara property had a gate.

Peterson followed Anaya-Cabrera to the Hagara property, where the gate was open. Anaya-Cabrera parked and exited his truck. After exiting, Anaya-Cabrera turned his body sideways towards Peterson in a "bladed stance," which Peterson described as suggesting that a confrontation may ensue. *Id.* (internal quotation marks omitted). When Anaya-Cabrera pulled his hand out of his pocket, a small item fell out of his pocket. The item was a package of methamphetamine. Peterson detained and arrested Anaya-Cabrera.

Peterson impounded the truck pending his application for a search warrant. After receiving a search warrant, Peterson and Detective Richard Ramirez, a member of the drug task force, searched the truck. The truck contained clothing and personal items. The officers found Anaya-Cabrera's wallet with his identification in the driver's seat and money transfer paperwork containing Anaya-Cabrera's name inside of the truck. The truck also contained drug paraphernalia, an electronic scale, and a locking gun case. The gun case was near the front console of the truck and was visible from outside of the truck.

The officers also found a loaded handgun under the driver's seat of the truck. Peterson testified that the gun "was directly beneath where Mr. [Anaya-]Cabrera had been seated in the

3

vehicle, so within arm's reach underneath the front driver's seat." 2 Verbatim Report of Proceedings (VRP) at 269. Peterson stated that based on where Anaya-Cabrera was located in the truck, the gun was "easily accessible." *Id.* The officers disassembled the interior of the truck after observing pry marks and loose screws in the interior. The officers found two packages of heroin and one package of methamphetamine inside the driver's side door panel.

The State charged Anaya-Cabrera with possession of methamphetamine with intent to deliver while armed with a firearm, possession of heroin with intent to deliver while armed with a firearm, and carrying a concealed pistol without a license.

Anaya-Cabrera moved to suppress evidence related to the search and seizure. Anaya-Cabrera argued that the evidence was obtained in violation of his constitutional rights because Peterson's seizure of Anaya-Cabrera was not supported by reasonable and articulable suspicion. Anaya-Cabrera argued that the seizure was not supported by reasonable and articulable suspicion because Peterson did not know of any facts that connected Anaya-Cabrera to the disturbance at the Hagara property.

The court held a hearing on Anaya-Cabrera's motion to suppress. At the hearing, Peterson testified to the facts outlined above. In addition, Peterson also testified that his decision to seize Anaya-Cabrera was also supported by the fact that dispatch had told him that a silver truck was involved in the disturbance at the Hagara property. Peterson did not provide this fact in his written report.

After a hearing on the matter, the court denied Anaya-Cabrera's motion. The court concluded that Peterson's initial detention of Anaya-Cabrera was based on reasonable and articulable suspicion of criminal activity. The court based its decision on the following facts known

to Peterson at the time and the rational inferences therefrom: (1) Peterson had been dispatched to a disturbance at the Hagara property involving a Latino male; (2) on his way to the property, Peterson observed Anaya-Cabrera, a Latino male, about a quarter mile away from the property driving away from the property; (3) Peterson knew from his recent encounter with Anaya-Cabrera that he had recently moved from the Hagara property and that there was some recent history of conflict between him and Hagara; (4) when Peterson came up behind Anaya-Cabrera's truck with his lights on, Anaya-Cabrera rolled down his window and said something to Peterson to the effect of, "I'll meet you at the gate," which Peterson took to refer to the gate at the Hagara property, and that was in fact where Anaya-Cabrera pulled over and stopped. CP at 20 (internal quotation marks omitted).

In the court's order denying Anaya-Cabrera's motion, the court did not make a finding of fact on whether dispatch told Peterson that a silver truck was involved in the disturbance at the Hagara property. However, the court's order noted that "[e]ven without information about a silver pickup truck being involved, this information was sufficient to give Deputy Peterson reasonable and articulable suspicion that the Defendant had been involved in the disturbance at the Hagara property to justify detaining him." *Id.*

The case proceeded to trial. At trial, Anaya-Cabrera conceded that he was a drug user and that he had methamphetamine in his pocket when he was seized by Peterson, but stated he only possessed the drugs for personal use. With respect to the drugs found in the truck, Anaya-Cabrera raised the defense of unwitting possession, arguing that he was unaware that there were drugs inside of the truck. Anaya-Cabrera also claimed that the State could not prove that he had knowledge of the gun under his seat.

At trial, Peterson testified to the facts above. Ramirez testified as to his observations in assisting in the execution of the search warrant on the truck. The State also asked Ramirez questions about drug users when buying drugs from dealers, and the following colloquy ensued:

> [State]: [I]n your experience investigating the drug culture in Grays Harbor County, have you come across users who will buy more than a personal amount of drugs and then sell it to their friends to kind of offset their own costs? Is that common?
> [Ramirez]: Yes, it is.
> [State]: All right. And in your experience dealing with folks who are either getting to those heavier weights or buying from their friends, have you encountered peop1e in that situation who have firearms?
> . . . .
> [Ramirez]: Yes, I have.
> [State]: And in investigating those crimes and talking to those folks, from your training and experience, why might somebody engage in that kind of drug activity carry a firearm?
> [Ramirez]: Normally . . . so they don't get ripped off or for protection.
> [State]: Okay. And in your experience doing drug interdiction in this county, how often do you come across people who have firearms while they're carrying say, for example, that much drugs?
> [Ramirez]: I would say it's about 90 percent of the time.

2 VRP at 292-93. Anaya-Cabrera did not object.

The jury convicted Anaya-Cabrera of the lesser included crimes of unlawful possession of methamphetamine and unlawful possession heroin. The jury returned special verdict findings that Anaya-Cabrera was armed with a firearm during the commission of the crimes. The jury also found Anaya-Cabrera guilty of carrying a concealed pistol without a license.

Anaya-Cabrera appeals.

DISCUSSION

I. SEIZURE

Anaya-Cabrera argues that the trial court erred in denying his motion to suppress all evidence discovered after he was seized by Peterson because Peterson did not have sufficient grounds to seize him in the first place. We disagree.

"In reviewing the denial of a motion to suppress, we review the trial court's conclusions of law de novo and its findings of fact used to support those conclusions for substantial evidence." *State v. Fuentes*, 183 Wn.2d 149, 157, 352 P.3d 152 (2015). If the defendant does not challenge the trial court's findings of fact, this court considers them verities on appeal. *State v. Bray*, 143 Wn. App. 148, 152, 177 P.3d 154 (2008).

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution demand that an officer obtain a warrant before seizing an individual unless an exception to the warrant requirement applies. *State v. Weyand*, 188 Wn.2d 804, 811, 399 P.3d 530 (2017). "The State has the burden to prove that a warrant exception applies." *State v. Bliss*, 153 Wn. App. 197, 203, 222 P.3d 107 (2009).

One such exception to the warrant requirement permits an officer to conduct a brief investigative stop known as a *Terry* stop. *State v. Z.U.E.*, 183 Wn.2d 610, 617, 352 P.3d 796 (2015). A *Terry* stop is permissible if the "officer has a reasonable suspicion, grounded in specific and articulable facts, that the person stopped has been or is about to be involved in a crime." *State v. Acrey*, 148 Wn.2d 738, 747, 64 P.3d 594 (2003). Generalized suspicion that the person may be up to no good is insufficient to justify a stop. *Bliss*, 153 Wn. App. at 204. Rather, "the facts must

connect the particular person to the *particular crime* that the officer seeks to investigate." *Z.U.E.*, 183 Wn.2d at 618.

In determining whether an officer's suspicion was reasonable, we look to the totality of the circumstances. *Acrey*, 148 Wn.2d at 747. Among the factors to consider when evaluating whether the stop was proper are the officer's training and experience, the location of the stop, and the conduct of the detainee. *Id*. To an extent, reasonableness of the stop depends on the seriousness of the suspected criminal conduct. *State v. McCord*, 19 Wn. App. 250, 253, 576 P.2d 892 (1978).

The parties agree that Anaya-Cabrera was seized when Peterson activated his lights while behind Anaya-Cabrera's truck. Anaya-Cabrera does not challenge any findings of fact supporting the trial court's conclusion that Peterson's initial detention of Anaya-Cabrera was based on reasonable and articulable suspicion of criminal activity. Therefore, those findings are verities on appeal. *Bray*, 143 Wn. App. at 152. Rather, Anaya-Cabrera challenges only the trial court's conclusion of law that Peterson's detention of Anaya-Cabrera was based on reasonable suspicion, arguing that reasonable suspicion was lacking because Peterson did not know if Anaya-Cabrera had any involvement with the disturbance at the Hagara property.

Anaya-Cabrera argues that Peterson did not have reasonable suspicion to detain him based on the absence of a finding regarding whether Peterson learned from dispatch that a silver pickup truck may have been involved in the disturbance. At the hearing on Anaya-Cabrera's motion to suppress, Peterson claimed for the first time that dispatch told him that a silver truck was involved in the disturbance at the Hagara property. However, when denying Anaya-Cabrera's motion, the court expressly stated that "[e]ven without information about a silver pickup truck being involved, this information was sufficient to give Deputy Peterson reasonable and articulable suspicion that

the Defendant had been involved in the disturbance at the Hagara property to justify detaining him." CP at 20.

Anaya-Cabrera also asserts that race played a significant role in Peterson's decision to stop Anaya-Cabrera, which is not a legitimate basis for a stop. However, the record does not support his claim. The record does not show any circumstances that indicate that Peterson's seizure of Anaya-Cabrera was pretextual or due to bias based on race or any other illegitimate consideration based on race. Rather, dispatch specifically described the person involved in the disturbance as a Latino male.

Here, the totality of the circumstances support Peterson's reasonable suspicion that Anaya-Cabrera was involved with criminal activity. *Acrey*, 148 Wn.2d at 747. The unchallenged findings of fact establish that Peterson understood the disturbance at the Hagara property involved either a possible burglary or a person being held against their will. While approaching the property, Peterson saw Anaya-Cabrera, with whom he was familiar, driving away from the property. At the time the seizure occurred, Peterson knew that Anaya-Cabrera had recently moved from the property and that Anaya-Cabrera and Hagara had a recent history of conflict. These are articulable facts that suggest a connection between Anaya-Cabrera and the disturbance at the Hagara property. *See Z.U.E.*, 183 Wn.2d at 618. Thus, the trial court correctly concluded that Anaya-Cabrera's detention was based on reasonable suspicion and did not err in denying his motion to suppress.

## II. PROFILE EVIDENCE

Anaya-Cabrera argues that Ramirez gave improper profile testimony that invaded the province of the jury and violated his constitutional right to a jury trial. He argues that as a result of this error, the jury's special verdict findings that Anaya-Cabrera was armed during the

commission of the crime of unlawful possession of a methamphetamine and the crime of unlawful possession of heroin must be reversed. Anaya-Cabrera acknowledges that he did not object to the testimony at trial but asserts that he may challenge this evidence for the first time on appeal because he raises a manifest constitutional error. We disagree.

A. PRESERVATION ON APPEAL

Generally, issues and arguments not presented to the trial court will not be considered on appeal. RAP 2.5(a). A party objecting to the admission of evidence must make a timely and specific objection at trial. *State v. Powell*, 166 Wn.2d 73, 82, 206 P.3d 321 (2009). Washington courts have strictly applied RAP 2.5(a) to claimed evidentiary errors "because trial counsel's failure to object to the error robs the court of the opportunity to correct the error and avoid a retrial." *Id*.

However, an appellant does not waive a manifest error affecting a constitutional right by failing to object below. RAP 2.5(a)(3). This exception ensures that "only certain constitutional questions can be raised for the first time on review." *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009). In order to merit review, the appellant must show that (1) the error is of constitutional magnitude and (2) the error is manifest. RAP 2.5(a)(3); *O'Hara*, 167 Wn.2d at 98. Specifically, "the appellant must 'identify a constitutional error and show how the alleged error actually affected the [appellant]'s rights at trial.'" *O'Hara*, 167 Wn.2d at 98 (alteration in original) (quoting *State v. Kirkman*, 159 Wn.2d 918, 926-27, 155 P.3d 125 (2007)).

We do not assume that an alleged error is of constitutional magnitude. *Id*. Instead, we look to the asserted claim and the facts alleged by the appellant and "assess whether, if correct, it implicates a constitutional interest as compared to another form of trial error." *Id*.

B. ANAYA-CABRERA FAILS TO DEMONSTRATE ERROR

In order to obtain review, Anaya-Cabrera must prove that the testimony he complains of actually amounted to a constitutional error. *Id*. The testimony that Anaya-Cabrera complains of is Ramirez's testimony that in his experience, he has encountered people that carry firearms while buying drugs, and that people "[n]ormally" carry a firearm when buying drugs "so they don't get ripped off or for protection." 2 VRP at 293. Anaya-Cabrera also takes issue with Ramirez's testimony that in his experience, "about 90 percent" of people who carry "that much drugs" also carry a firearm. *Id.*

Anaya-Cabrera asserts that this testimony implied that he was armed with a firearm based on characteristics of others involved in drug activity, which he alleges constituted improper profile testimony and infringed on his constitutional right to a jury determination of the facts required for the imposition of the sentencing enhancements. However, because we disagree that the testimony complained of constituted profile testimony, Anaya-Cabrera's claim fails at the outset.

Anaya-Cabrera relies entirely on Division III's recent decision in *State v. Crow*, 8 Wn. App. 2d 480, 438 P.3d 541, *review denied*, 193 Wn.2d 1038 (2019). Crow was convicted of unlawful possession of a firearm and possession of a stolen firearm. *Id*. at 493. Crow could not possess a firearm due to a prior felony. *Id*. at 487. At trial, Crow argued that he did not have knowledge that the firearm was stolen. *Id*. The State introduced police testimony stating that (1) the majority of people who possess firearms while prohibited from doing so possess *stolen* firearms; (2) a person who is prohibited from possessing firearms will usually obtain one by stealing it; (3) illegally obtained firearms are usually stolen; and (4) when approached by police,

one who knows that he possesses a stolen firearm usually runs from police and discards the firearm. *Id*. at 487-90. Crow did not object to the testimony. *Id*. at 487.

The court held that this testimony constituted improper profile testimony.[1] *Id*. at 501. The court reasoned that the testimony told the jurors that because Crow fell into the profile of persons prohibited from possessing firearms, Crow knew the firearm was stolen because he either stole the firearm or purchased it unlawfully. *Id*. The testimony also linked Crow's behavior of running and discarding the firearm when approached by the police to other persons who run from the police and discard a firearm because they know that the firearm is stolen. *Id*.

Assuming we agree with Division III's decision in *Crow*, an issue we need not decide to resolve this case, the difference between the testimony in *Crow* and the testimony at issue here is significant. In *Crow*, the State used the officers' testimony to argue that because the majority of people who possess a firearm while not having the right to do so possess *stolen* firearms, Crow must have known the firearm he possessed was stolen because he was prohibited from possessing a firearm. *Id*. The State used this evidence not as background information about an element of the criminal enterprise with which the jury was unlikely to be familiar, but as a substantive evidence of Crow's mental state.

Here, Ramirez made two statements that Anaya-Cabrera characterizes as "profile" testimony: (1) that he has personally encountered people engaged in the drug trade who have firearms, and that based on his experience, the people he has encountered in the drug trade who

---

[1] The court did not address whether Crow's claim constituted a manifest constitutional error and instead resolved the issue on whether Crow's counsel was ineffective for failing to object. *Crow*, 8 Wn. App. 2d at 494.

possess firearms might do so for personal protection or to guard against theft; and (2) about 90 percent of the time he has encountered people who carry "that much drugs," they are also in possession of firearms.[2] 2 VRP at 293. For reasons set forth below, Ramirez's statements do not constitute profile evidence.

Of these two statements, the only one that might arguably be considered profile testimony is the second statement. But this remark was limited to the mere *possession* of firearms, not possession of a firearm for the purpose of offense or defense, such that a nexus could be found between the firearm and the crime. Mere possession of a firearm is not sufficient to prove that someone was armed with a firearm during the commission of a crime, nor was Anaya-Cabrera charged with a possessory offense related to the firearm. Anaya-Cabrera agrees in this appeal that the State proved he constructively possessed the gun. Ramirez's "90 percent" remark was limited to an association between people who carry an unspecified quantity of drugs and people who *possess* firearms. *Id.* at 293. Because the remark was limited to mere possession of a firearm, an offense not specifically challenged on appeal, Ramirez's testimony does not constitute profile evidence.

The first remark by Ramirez likewise did not constitute impermissible profile testimony. In the first remark, Ramirez limited his comment to people he has personally encountered, as opposed to a broader class of people, and said that when he encounters people engaged in the drug

---

[2] It is not clear from the record what the prosecutor meant by "that much drugs." 2 VRP at 293. Specifically, it is not clear if the prosecutor was referring to people who carry "heavier weights" of drugs, which he mentioned in an earlier question that he asked Ramirez, or if he was referring to the quantity of drugs found in Anaya-Cabrera's possession. *See id.* at 292. A timely objection from defense counsel could have clarified the matter, assuming defense counsel had found this testimony objectionable.

trade who possess a firearm, they normally do so for personal protection or to guard against theft. This testimony could hardly have come as a surprise to the jury. This is a natural inference one would draw when considering why someone engaged in drug transactions might carry a firearm. However, the jury did not find that Anaya-Cabrera possessed drugs with the intent to deliver them. Anaya-Cabrera was acquitted of both intent to deliver charges. Rather, the jury found that Anaya-Cabrera merely possessed drugs, presumably for his personal use. As such, Ramirez's testimony, insofar as it referenced those engaged in drug transactions, simply did not apply to Anaya-Cabrera.

Because Anaya-Cabrera fails to demonstrate that the testimony complained of was erroneous, we need not consider whether he has satisfied RAP 2.5(a)(3) because there is no error for this court to review.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Anaya-Cabrera argues that his counsel rendered ineffective assistance because his counsel failed to object to the admission of Ramirez's alleged profile testimony. We disagree.

The right to counsel includes the right to effective assistance of counsel. *State v. Crawford*, 159 Wn.2d 86, 97, 147 P.3d 1288 (2006). To show ineffective assistance of counsel, a defendant must show "(1) that defense counsel's conduct was deficient . . . and (2) that the deficient performance resulted in prejudice." *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004). There is a strong presumption of effective assistance, and the defendant bears the burden of demonstrating the absence of a legitimate strategic or tactical reason for the challenged conduct. *Id*.

Decisions on whether and when to object are "classic example[s] of trial tactics." *State v. Madison*, 53 Wn. App. 754, 763, 770 P.2d 662 (1989). "'Only in egregious circumstances, on

testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal.'" *State v. Johnston*, 143 Wn. App. 1, 19, 177 P.3d 1127 (2007) (quoting *Madison*, 53 Wn. App. at 763). To show prejudice, the defendant must also show that counsel's objection would likely have been sustained and the result of the proceeding would have been different without the inadmissible evidence. *Crow*, 8 Wn. App. 2d at 508-09.

Because we conclude that the testimony complained of did not constitute profile testimony, Anaya-Cabrera cannot show that an objection to the testimony would likely have been sustained, or that he suffered prejudice from defense counsel's decision not to object to the testimony. Thus, Anaya-Cabrera's claim of ineffective assistance of counsel fails.

IV. SUFFICIENCY OF THE EVIDENCE PROVING ANAYA-CABRERA WAS ARMED

Anaya-Cabrera argues that the State did not meet its burden of proving the firearm enhancements because the State failed to prove that he was armed. Anaya-Cabrera argues that the State failed to prove that he was armed because (1) the State did not show that the gun was easily accessible and readily available, and (2) the State did not prove a nexus between Anaya-Cabrera, the crime, and the gun. We disagree.

A. LEGAL PRINCIPLES

We review de novo whether the facts are sufficient as a matter of law to prove that a person was armed for purposes of the firearm enhancement. *State v. Sassen Van Elsloo*, 191 Wn.2d 798, 825, 425 P.3d 807 (2018). We must determine "'whether any rational trier of fact could have found the elements of the charged crime beyond a reasonable doubt.'" *Id*. at 826 (quoting *State v. Brown*, 162 Wn.2d 422, 428, 173 P.3d 245 (2007)). "A sufficiency challenge admits the truth of the State's evidence and accepts the reasonable inferences to be made from it." *State v. O'Neal*, 159 Wn.2d

500, 505, 150 P.3d 1121 (2007). We defer to the fact finder on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

RCW 9.94A.533(3) provides, in part: "[A]dditional times shall be added to the standard sentence range for felony crimes . . . if the offender . . . was *armed with a firearm*." (Emphasis added.) To prove a person is "armed" for purposes of the firearm sentence enhancement, "the State must prove (1) that a firearm was easily accessible and readily available for offensive or defensive purposes during the commission of the crime and (2) that a nexus exists among the defendant, the weapon, and the crime." *Sassen Van Elsloo*, 191 Wn.2d at 826.

B. EASILY ACCESSIBLE AND READILY AVAILABLE

To show that a firearm is easily accessible and readily available, close proximity or constructive possession of a firearm at the crime scene is insufficient to show that the person was armed. *Id*. Nevertheless,

> [a] defendant "does not have to be armed at the moment of arrest to be armed for purposes of the firearms enhancement," and the State "need not establish with mathematical precision the specific time and place that a weapon was readily available and easily accessible, so long as it was at the time of the crime."

*Id*. at 826-27 (quoting *O'Neal*, 159 Wn.2d at 504-05). "The use may be for either offensive *or* defensive purposes, whether to facilitate the commission of the crime, escape from the scene of the crime, protect contraband or the like, or prevent investigation, discovery, or apprehension by the police." *State v. Gurske*, 155 Wn.2d 134, 139, 118 P.3d 333 (2005). For example, in a drug possession case, a firearm could be used to acquire or protect drugs. *Id*. It also could be used to inhibit the police from investigation or apprehension at the time they discover the drugs or seek to execute a warrant. *Id*.

In *State v. Sabala*, the defendant was stopped while driving his car after buying heroin, and a search of his person yielded heroin in his sock. 44 Wn. App. 444, 445, 723 P.2d 5 (1986). The police also found a loaded gun under Sabala's seat with the grip easily within reach of the driver. *Id*. at 445, 448. The court found this evidence sufficient to conclude that a firearm was easily accessible and readily available for use during the commission of the crime. *Id.* at 448; *see also Gurske*, 155 Wn.2d at 142.

Here, too, the State introduced evidence of a loaded gun beneath the driver's seat of the truck that Anaya-Cabrera was driving. The close proximity of the loaded firearm gives rise to the inference that anyone sitting in the driver's seat could have reached for the firearm and used the firearm against another person. Therefore, a rational jury could have found that the gun was easily accessible and readily available to Anaya-Cabrera from the driver's seat. *See Gurske*, 155 Wn.2d at 143. Furthermore, Peterson testified that the gun was "easily accessible" and "within arm's reach underneath the front driver's seat." 2 VRP at 269. Taking this evidence in the light most favorable to the State, there is sufficient evidence that the gun was easily accessible and readily available for use.

## C. NEXUS REQUIREMENT

For a firearm enhancement to apply, there must also be a nexus between "'the nature of the crime, the type of weapon, and the circumstances under which the weapon is found.'" *Brown*, 162 Wn.2d at 431 (quoting *State v. Schelin*, 147 Wn.2d 562, 570, 55 P.3d 632 (2002)). The nexus requirement "serves to place 'parameters … on the determination of when a defendant is armed, especially in the instance of a continuing crime such as constructive possession' of drugs." *Sassen Van Elsloo*, 191 Wn.2d at 827 (alteration in original) (quoting *Gurske*, 155 Wn.2d at 140).

To determine whether there was a nexus, we review "'the nature of the crime, the type of weapon, and the circumstances under which the weapon [was] found (e.g., whether in the open, in a locked or unlocked container, in a closet on a shelf, or in a drawer).'" *Gurske*, 155 Wn.2d at 142 (quoting *Schelin*, 147 Wn.2d at 570). But "when the crime is of a continuing nature, such as a drug operation, a nexus exists if the firearm is 'there to be used' in the commission of the crime." *Sassen Van Elsloo*, 191 Wn.2d at 828 (quoting *Gurske*, 155 Wn.2d at 138). Whether the weapon is there to be used is a fact specific inquiry. *State v. Neff*, 163 Wn.2d 453, 462, 181 P.3d 819 (2008).

In *State v. Easterlin*, sufficient evidence supported a connection between the defendant, the gun, and the crime of possession where a police officer found Easterlin asleep in his car with a gun on his lap and cocaine in his sock. 159 Wn.2d 203, 207, 210, 149 P.3d 366 (2006). In *Sassen Van Elsloo*, the court found sufficient evidence to support the nexus requirement where the shotgun was found less than a foot from the backpack that contained the drugs, and the shotgun was ready for use because it was loaded and not locked in a safe. 191 Wn.2d at 830. Here, the State presented evidence that the gun was in close proximity to the drugs, Anaya-Cabrera had easy access to the gun, and the gun was ready for immediate use. These facts and circumstances support an inference of a connection between the gun, the crime of possession of a controlled substance, and Anaya-Cabrera. *See Easterlin*, 159 Wn.2d at 210. Therefore, we conclude that a rational trier of fact could reasonably infer that the gun was "there to be used" in the commission of the crime either against another person while in possession of the drugs or against the officer who stopped him. *Gurske*, 155 Wn.2d at 138.

Taking the evidence in the light most favorable to the State, the evidence is sufficient to support the jury's verdict that Anaya-Cabrera was armed with a firearm because a rational trier of

fact could find that the gun was easily accessible and readily available, and that there was a nexus among the gun, the commission of the drug crimes, and Anaya-Cabrera.[3]

## V. SAG

In his SAG, Anaya-Cabrera argues that (1) the trial court abused its discretion when it denied his motion to suppress the drugs found inside of the truck due to the State's late discovery disclosure and illegal impoundment of the truck, and (2) the trial court abused its discretion by imposing the firearm sentencing enhancements to run consecutively. We conclude that these issues lack merit.

### A. MOTION TO SUPPRESS

Anaya-Cabrera argues that the trial court abused its discretion when it denied his counsel's motion to exclude the drug evidence found inside of the truck because (1) the State failed to send the drug samples to the crime laboratory until four weeks before trial, and (2) the truck was unlawfully impounded. Anaya-Cabrera states that the State's failure to send the drug samples until four weeks before trial demonstrates a lack of due diligence and forced him to choose between his constitutional speedy trial right and his right to effective assistance of counsel. We disagree.

---

[3] Anaya-Cabrera also argues that this evidence is insufficient to prove that he was armed because the State failed to prove that he knew the gun was in the truck. A person's knowledge of the gun's presence may be a factor for the jury to consider in deciding whether the defendant was armed. *State v. Barnes*, 153 Wn.2d 378, 386-87, 103 P.3d 1219 (2005). However, knowledge of the gun is not an element of the firearm enhancement that must be proven by the State. *Id.* at 387. Moreover, Anaya-Cabrera does not present any argument about how the State's evidence was insufficient. He merely argues that because the State did not introduce any statements by Anaya-Cabrera that he knew the gun was under his seat, the evidence is necessarily insufficient to show that he knew the gun was there. But the jury has the sole responsibility of weighing the evidence, and we do not reweigh the evidence on appeal. *State v. Stewart*, 141 Wn. App. 791, 795, 174 P.3d 111 (2007). Anaya-Cabrera's argument lacks merit.

*1. Lack of Diligence in Sending Drug Evidence to the Laboratory*

Prior to trial, defense counsel asked the trial court to dismiss the drug charges against Anaya-Cabrera or, in the alternative, to exclude the drug evidence found in Anaya-Cabrera's truck based on the State's failure to send the drug samples until four weeks prior to trial. The trial court denied both motions. In his SAG, Anaya-Cabrera asks us to review only the portion of the trial court's decision denying the motion to exclude the drug evidence as a sanction for the State's lack of diligence. Although Anaya-Cabrera points us to CrR 8.3(b), that rule governs *dismissal* of criminal cases. The rule that governs the suppression of evidence as a sanction for a discovery violation by the State is CrR 4.7(h)(7).

Under CrR 4.7(h)(7)(i), when a party fails to comply with an applicable discovery rule, the court may "grant a continuance, dismiss the action or enter such other order as it deems just under the circumstances." The purpose of CrR 4.7 is to protect against surprise that causes prejudice to the defense. *State v. Bradfield*, 29 Wn. App. 679, 682, 630 P.2d 494 (1981). Thus, "[e]xclusion or suppression of evidence is an extraordinary remedy and should be applied narrowly." *State v. Hutchinson*, 135 Wn.2d 863, 882, 959 P.2d 1061 (1998), *abrogated in part on other grounds by State v. Jackson*, No. 97681-3, slip op. at _ (Wash. July 16, 2020), https://www.courts.wa.gov/opinions/pdf/976813.pdf. Violations which involve failure to provide evidence in a timely manner "are appropriately remedied by continuing trial to give the nonviolating party time to . . . prepare to address new evidence." *Hutchinson*, 135 Wn.2d at 881. Absent a showing of prejudice, we will not interfere with the court's exercise of discretion when denying sanctions under CrR 4.7(h)(7)(i). *Bradfield*, 29 Wn. App. at 682.

Before trial, Anaya-Cabrera's counsel asked the court to dismiss the State's case because the State was not diligent in sending the drug samples to the laboratory. When the court denied the motion, Anaya-Cabrera's counsel unsuccessfully moved to exclude the drugs found in the car. Anaya-Cabrera's counsel never requested a continuance. His counsel articulated what she may have explored further had the results been received earlier, but she did not explain how the late discovery resulted in prejudice. Anaya-Cabrera also does not explain how he was prejudiced by the trial court's decision to deny his counsel's motion to suppress the drugs found inside of the truck.

Because Anaya-Cabrera does not show prejudice, we will not disturb the trial court's ruling. *Bradfield*, 29 Wn. App. at 682.

*2. Impoundment of the Truck*

In his motion to suppress to the trial court, Anaya-Cabrera challenged the impoundment of his truck. However, as the trial court found, Anaya-Cabrera's truck was temporarily impounded for the purpose of securing it pending the application for, and issuance of, a search warrant. The search of Anaya-Cabrera's truck was conducted pursuant to that search warrant. If police officers have probable cause to search a vehicle, they may seize the vehicle for the time reasonably needed to obtain a search warrant. *State v. Campbell*, 166 Wn. App. 464, 472, 272 P.3d 859 (2011). That is what occurred here, as the trial court correctly found.

Because Peterson had authority to impound the truck in order to obtain a search warrant, we conclude that the trial court did not abuse its discretion when denying Anaya-Cabrera's motion to suppress.

## B. FIREARM SENTENCING ENHANCEMENTS

Anaya-Cabrera argues that the trial court abused its discretion by ordering the firearm sentencing enhancements to run consecutively. We disagree.

The trial court sentenced Anaya-Cabrera to 18 months confinement for each possession charge. RCW 9.94A.533(3)(e) states that "all firearm enhancements under this section are mandatory, shall be served in total confinement, and shall run consecutively to all other sentencing provisions, including other firearm or deadly weapon enhancements, for all offenses sentenced under this chapter." Even when the defendant is convicted of two offenses that constitute the same criminal conduct, the enhancements are consecutive. *State v. Mandanas*, 168 Wn.2d 84, 88, 228 P.3d 13 (2010).

Here, the trial court correctly imposed the firearm sentencing enhancements to run consecutively under RCW 9.94A.533(3)(e). Therefore, Anaya-Cabrera's claim lacks merit.

CONCLUSION

We hold that the trial court properly denied Anaya-Cabrera's suppression motion, and that the State did not rely on profile testimony to convict him of the firearm sentencing enhancements. We also hold that Anaya-Cabrera did not receive ineffective assistance of counsel, and the State

presented sufficient evidence to support the firearm sentencing enhancements. Finally, we hold that the issues Anaya-Cabrera raises in his SAG lack merit.

Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, J.

We concur:

LEE, C.J.

GLASGOW, J.